Charles **RICHARDSON**, a/k/a Charles Richenson, Appellant
(Defendant Below),

v.

**STATE of Indiana, Appellee**
(Plaintiff Below).

No. 383S103.

Supreme Court of Indiana.

Aug. 28, 1985.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was charged with murder, Ind.Code § 35–42–1–1(1) (Burns 1979 Repl.), robbery, a class B felony, Ind. Code § 35–42–5–1 (Burns 1979 Repl.), and with being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.). He pled guilty to the robbery and habitual offender counts, and following a jury trial was convicted of the murder charge. He was sentenced to forty (40) years imprisonment upon the murder conviction, ten (10) years upon the robbery conviction, and to a separate 30-year term upon the habitual offender finding, all sentences to be served consecutively. This direct appeal challenges only the murder conviction, and presents the following three (3) issues:

(1) Whether the trial court erred in allowing the State to present rebuttal testimony from an expert witness.

(2) Whether the trial court erred in admitting into evidence a series of photographs of the victim as found after the crime.

(3) Whether the evidence was sufficient to sustain the murder conviction.

We affirm the murder conviction but also address, *sua sponte,* certain errors in Defendant's sentencing, and remand this cause with instructions.

The evidence presented at trial revealed that Defendant traveled to Lafayette from Hammond to purchase a rifle or other firearm. In Lafayette, he met one Farrell who offered to sell him a rifle. He demonstrated the gun and revealed that it did not properly eject cartridges. Notwithstanding the defect, Defendant purchased the gun. Later, he accompanied one Roethemeir to his apartment, which was across the hall from the victim's apartment, where he experimented further with the weapon but was unable to eject the cartridge that was in the chamber. Roethemeir gave Defendant permission to spend the night in the apartment and left with a friend, after having obtained the victim's permission for Defendant to use his telephone.

After Roethemeir's departure, Defendant entered the victim's apartment and shot him. Defendant testified that he entered, with permission to use the telephone, but that he and the victim had discussed the problem with the gun and that he went back to Roethemeier's apartment, picked up the gun, returned to demonstrate it to the victim, and, in the process, shot him accidentally.

Defendant theorized that he must have cocked the gun accidentally while demonstrating its action to the victim and further testified that while holding the gun, he stumbled, clinched the gun, and it discharged. He panicked, because he feared the police would not believe him, and fled. He admitted to having committed the robbery as he fled.

## ISSUE I

Defendant contends that the trial court committed reversible error when it allowed the State to present rebuttal testimony from the State's firearms expert, Wilder. We find no error.

During the State's case-in-chief, Wilder testified that the rifle was working properly, but suggested that it would not work properly if a cartridge were jammed into the chamber past the ejector mechanism. He also stated that the rifle would not fire unless it were fully cocked. During his case-in-chief, Defendant then testified that he had gone to the victim for assistance because the gun would not eject the cartridge, that he must have cocked the gun while working on the problem, and that he shot the victim accidentally when he stumbled. Over Defendant's objection the State was then permitted to present further testimony from Wilder, after he had conducted informal tests on the rifle during a recess following Defendant's testimony. Wilder testified on rebuttal that if the cartridge were pushed into the chamber past the ejector mechanism it would not eject, but added that neither would the rifle fire, under such circumstances.

Defendant claims that this testimony was improper rebuttal evidence. He em-

phasizes that he was not given an opportunity to observe Wilder's "tests" during the recess, and further argues that Wilder's rebuttal testimony did not actually contradict any of Defendant's evidence, but was instead only intended to bolster the State's case-in-chief. We reject these contentions.

■ Although rebuttal is limited to that evidence which tends to explain, contradict or disprove evidence offered by the adverse party, the scope of rebuttal testimony is generally left to the sound discretion of the trial court. *See, e.g., Smith v. State*, (1983), Ind., 455 N.E.2d 346, 354; *Wells v. State* (1982), Ind., 441 N.E.2d 458, 464. Wilder's rebuttal testimony tended to demonstrate that if the rifle was not properly expelling cartridges when Defendant went to the victim's apartment, it would not have fired. Wilder's testimony thus tended to "explain, contradict or disprove" Defendant's version of the shooting, and properly was submitted to the jury.

■ Regarding the fact that Wilder's test of the rifles's ejector mechanism was conducted outside Defendant's or his counsel's presence during a recess following Defendant's testimony, Defendant has shown no prejudice. Wilder's rebuttal testimony was subject to cross-examination, and the record reveals no request for a continuance to meet the testimony. The State's argument is well taken that Defendant's story concerning how the shooting occurred could not be met until after Defendant had testified. Defendant has not demonstrated prejudice from the fact that neither he nor his counsel had been present when Wilder tested the rifle during a recess.

### ISSUE II

■ Defendant next argues that the trial court erred in admitting a series of photographs of the victim as he appeared when found after the crime. He claims that, as a series, the photographs were so inflammatory and cumulative of other evidence, including a videotape, that he was denied a fair trial. We do not agree.

We recently stated:

"Such photographs are admissible if they provide relevant evidence and their relevance is not outweighed by their tendency to inflame and impassion the jury against the defendant. The question necessarily becomes one of balancing these concerns, and thus the trial court has broad discretion in determining whether such photographs should be admitted in a particular case." (Citations omitted.)

*Richardson v. State* (1985), Ind., 476 N.E.2d 497, 500. Applying these principles here, the photographs in question are somewhat repetitive and, as always, not pleasant to view as they depict the victim after he suffered the fatal wound. Nevertheless, they were relevant to demonstrate the manner of the victim's death. We do not find them unduly gruesome or inflammatory, and cannot say that the trial court abused its discretion in admitting them.

### ISSUE III

Defendant finally argues that the evidence was not sufficient to establish that he "knowingly or intentionally" killed the victim. We initially note our standard of review:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (Citations omitted.)

*Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Under this standard, the evidence was sufficient to sustain the conviction.

Defendant does not deny that he shot and killed the victim. Rather, he claims that the shooting was an accident, and that

the State failed to show that he acted "knowingly or intentionally" as required for a conviction of murder under Ind.Code § 35–42–1–1. Under Indiana law a person acts "intentionally" if, "when he engages in the conduct, it is his conscious objective to do so." A person acts "knowingly" if, "when he engages in the conduct, he is aware of a high probability that he is doing so." Ind.Code § 35–41–2–2(a–b) (Burns 1979 Repl.).

■ The record demonstrates that Defendant never knew the victim before the day of the crime. When Defendant entered the victim's apartment, or shortly thereafter, the rifle's safety catch must have been "off" and he must have cocked the rifle. Although Defendant claimed that he had gone to the victim to ask his help in getting the rifle to work correctly, the jury could have believed Wilder's expert testimony that the rifle would not have fired if the cartridge had been in the position which Defendant claimed. After the shooting Defendant did not attempt to summon assistance for the victim and await the authorities' arrival. Rather, he took an automobile by threatening the 18-year-old driver with the rifle, and then attempted to flee the area. Defendant's flight was circumstantial evidence of a consciousness of guilt which the jury could properly consider. *James v. State* (1976), 265 Ind. 384, 389–90, 354 N.E.2d 236, 240–41; *Pierce v. State* (1970), 253 Ind. 650, 657, 256 N.E.2d 557, 561. Although Defendant testified that he had been drinking, and there was other evidence that he had been drinking the day of the crime, an arresting officer testified that Defendant did not appear to be intoxicated.

■ Although Defendant claims that he had no motive to kill the 92-year-old victim and emphasizes that he took nothing from the victim's apartment, the jury was not required to believe his story that the shooting was an accident. It cannot be said, as a matter of law, that the State presented no substantial evidence from which the jury could have reasonably inferred that Defendant acted knowingly or intentional-

ly. Rather, the State presented sufficient evidence to sustain the conviction.

## SENTENCING ERRORS

We observe two problems with the Defendant's sentence, although they were not assigned by the motion to correct errors nor pressed on appeal.

■ First, the trial court's sentencing order specifically stated that the court found "no mitigating or aggravating circumstances," but nevertheless ordered the sentences for robbery and murder to be served consecutively. When a trial court enhances a sentence or imposes consecutive sentences, it must provide a specific and individualized statement of its reasons for doing so. *See, Haggard v. State* (1983), Ind., 445 N.E.2d 969, 973–74; *see also Shippen v. State* (1985), Ind., 477 N.E.2d 903, 905–06.

■ Second, the trial court's sentencing order appears to render a separate, 30-year sentence upon the habitual offender finding. However, the habitual offender penalty operates to enhance the sentence otherwise provided for an underlying felony. Ind.Code § 35–50–2–8(a) (Burns 1979 Repl., now section 35–50–2–8(e) [Burns 1985 Repl.]). *St. Mociers v. State* (1984), Ind., 459 N.E.2d 26, 29.

Accordingly, on remand the trial court is instructed to provide a particularized statement of its reasons for imposing consecutive sentences upon the murder and robbery convictions or to sentence Defendant to concurrent sentences. The court is also instructed to specify the sentence to be enhanced by reason of the habitual offender finding.

The conviction for murder is affirmed, and this cause is remanded to the trial court which is instructed to resentence Defendant in accordance with this opinion.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., not participating.