John Christopher CHUPP, Appellant
(Defendant Below)

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–8601–CR–34.

Supreme Court of Indiana.

July 2, 1987.

Allan L. Yackey, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant John Christopher Chupp was convicted of burglary, a class A felony, Ind.Code § 35–43–2–1 (Burns 1985 Repl.); robbery, a class A felony, Ind.Code § 35–42–5–1 (Burns 1985 Repl.); and confinement, a class B felony, Ind.Code § 35–42–3–3 (Burns 1985 Repl.). The trial court sentenced Chupp to seventy years, concurrent fifty-year sentences for each class A felony followed by twenty years for the class B felony.

On direct appeal Chupp raises six issues.

1) Whether the trial court erred in denying a motion for a new trial when a witness later recanted his testimony;

2) Whether the evidence of identification is sufficient to sustain the conviction;

3) Whether the trial court erred when it admitted evidence obtained from a warrantless seizure;

4) Whether the accused received effective assistance of counsel;

5) Whether the aggregate seventy-year sentence was unreasonable; and

6) Whether the accused was required to be present when the trial court granted a continuance.

At trial the evidence showed that L.M., a 72–year-old widow, was awakened around 11:30 p.m. on July 10, 1982 by three men who crashed through her bedroom door. They demanded to know where her money was kept, and she told them it was downstairs. One of the men found her purse but it contained only thirty-one dollars. To force her to reveal the location of the rest of her money, one of the men burned her hand with cigarette lighter. L.M. tried to explain that she had just returned from vacation and that thirty one dollars was all she had. One of the men directed the other two to ransack the house. The remaining man raped L.M. and then one of the men sodomized her.

The men bound and gagged L.M. and finished searching the house. The victim was not found until noon the following day when her son-in-law discovered her. An ambulance transported her to a hospital where a medical examination revealed that L.M. had suffered bruises, lacerations, blisters, and swelling. She lost her purse with thirty-one dollars, her lock box containing personal papers and silver coins, and her maroon car.

Robert Graham testified that on the night of the crimes he was at Michael Arnold's house. He saw Arnold, David King and Chupp with two guns, gloves and jackets. The three men left in Chupp's car saying they were going out to do "something." When they returned later in the evening, Chupp was driving his own car and King was driving a maroon car. Graham saw Chupp, Arnold and King take a metal box into the house and pry it open.

The three went through the envelopes in the box and found some silver coins.

The police received a tip about possible suspects in the case and sent Detective Joie Davis to investigate. He went to a residence looking for Chupp and Arnold. Robert Murray, who rented the house, answered the door. In addition to Murray, Detective Davis met two young men who introduced themselves as Robert Wells and Joe Brown. Detective Davis asked Murray if he would go outside to talk with him. Once outside, Davis asked Murray if he knew where to find Chupp. Davis said he wanted to talk to Chupp about a robbery and rape. Chupp was passed out in the bedroom, Murray said. He also said that the two men inside the house had given aliases. The men's names, Murray said, were David King and Michael Arnold. Murray told the officer he overheard the three men planning to leave the state.

Davis consulted with headquarters and arrested the three men soon thereafter. After the arrest, Murray requested that the police remove a green duffle bag belonging to Arnold and two suitcases belonging to Chupp and King. Detective Davis seized the luggage, obtained a search warrant, and searched it. Inside the duffle bag the police found a pillowcase that matched the linen in L.M.'s house.

At trial Arnold testified against appellant. Four months later Arnold wrote a letter to the trial judge recanting his testimony. He lied, Arnold wrote, because he blamed Chupp for his arrest and because appellant misinformed him about the amount of money the victim would have in her home. Arnold would not identify the third person involved in the crime; he only said it was not Chupp.

### I. New Trial Motion

■ Arnold's recantation does not necessarily give appellant the right to a new trial. When a party requests a new trial the movant must show, among other requirements, that the new evidence is credible and that it will probably result in a different outcome. *Smith v. State* (1983), Ind., 455 N.E.2d 346, 351. The decision to grant or deny a new trial rests within the trial court's sound discretion. This court will not overturn the trial court's decision unless it was an abuse of discretion. *Smith v. State* (1982), Ind., 429 N.E.2d 956, 958.

The trial court did not abuse its discretion when it denied appellant's motion for a new trial. "An allegation, or even an admission, of perjury does not in and of itself necessitate the granting of a new trial. The question ... is whether such evidence would probably result in a different outcome upon retrial." *Rector v. State* (1976), 264 Ind. 78, 84, 339 N.E.2d 551, 555–556 (citations omitted). Arnold's recantation lacks credibility and standing alone does not show that a different result is probable. When Arnold testified at the hearing on the motion he was evasive, and often gave inaudible answers. A different result is unlikely because of other testimony. For example, Graham testified that he saw Chupp with the fruits of the burglary shortly after the crime and Murray overheard the three men talk about the crime. The trial court was well within its authority to refuse the new trial.

### II. Sufficiency of Evidence

Appellant argues that Arnold's testimony is the only direct evidence placing him at the scene. Because Arnold later recanted, Chupp claims the evidence is insufficient to establish his presence beyond a reasonable doubt.

When reviewing a sufficiency claim this Court neither weighs the evidence nor judges the credibility of the witnesses. We consider the evidence most favorable to the judgment and draw reasonable inferences to support the verdict. This Court will affirm the conviction if a rational trier of fact could find beyond a reasonable doubt that the accused was the perpetrator. *Collier v. State* (1986), Ind., 498 N.E.2d 1219, 1220.

■ Appellant notes the uncorroborated, coerced, and equivocal statements of a lone eyewitness is insufficient. *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658. Appellant's use of *Gaddis*, however, is inappropriate to these facts. Though Arnold was

the sole witness who placed appellant at the scene, his testimony was neither uncorroborated nor equivocal. The only time Arnold equivocated was when he recanted.

Appellant admitted to Graham that he broke into a house with King and Arnold. Graham and Murray also heard the three men talking among themselves about various aspects of the crime. Although Arnold claims he was coerced by his counsel, there is no evidence besides his statement supporting that contention. With or without Arnold's testimony, the evidence supports the conviction.

### III. *Warrantless Seizure*

Appellant sought to exclude the pillowcase found in the green duffle bag as the product of an unreasonable search and seizure. The trial court denied the motion to suppress.

■ To determine an individual's standing for Fourth Amendment purposes, the test is whether the person can demonstrate a legitimate expectation of privacy in the area subject to government intrusion. *Tobias v. State* (1985), Ind., 479 N.E.2d 508, 510. Appellant does not have standing to challenge the warrantless seizure of the duffle bag from Murray's residence. "A frequent guest has no legitimate expectation of privacy unless he produces other evidence to show that he maintains a degree of control over the residence." *Stout v. State* (1985), Ind., 479 N.E.2d 563, 567. Here the appellant was a guest in the house which Murray leased. He had come the day before with Arnold and King after his car broke down. Clearly, Chupp had no control over the premises. The person who did, Murray, asked the police to remove the luggage when they came back to his house after the three men were arrested. Appellant had no expectation of privacy in Murray's residence; the seizure was requested by the permanent tenant.

After the police removed the bags, they obtained a warrant to search them. Chupp correctly states that if the original seizure was illegal, the subsequent warrant would not cure the defect. In this case, however, the original seizure was lawful.

### IV. *Ineffectiveness of Counsel*

Appellant alleges ineffective assistance of counsel on three grounds. First, his trial counsel failed to file a Motion to Correct Errors. Second, counsel neglected to represent him at the sentencing hearing. Third, his attorney did not adequately consult with him.

To establish ineffectiveness of counsel, appellant must show that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance so prejudiced the defendant as to deny him a fair trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Counsel's performance was neither unreasonable nor prejudicial. The State contends trial counsel did not file a Motion to Correct Errors because Chupp's family retained private counsel to pursue an appeal. Although this claim is not supported by testimony, appellant suffered no prejudice by the failure because the trial court considered the Belated Motion to Correct Error and this appeal ensued. *Burr v. State* (1986), Ind., 492 N.E.2d 306, 309.

■ As for counsel's performance at sentencing, Chupp simply asserts a "total failure to represent him in a favorable light," without alleging any particular failure or providing a transcript of the sentencing hearing. The record does reflect that counsel was present at the sentencing hearing and the law presumes a competent performance. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Appellant provides nothing to rebut that presumption.

■ Counsel was not necessarily ineffective simply because of insufficient consultation. *Jones v. State* (1986), Ind., 495 N.E.2d 532, 534. Prejudice must also be demonstrated. Appellant claims counsel's lack of consultation resulted in counsel's failure to present exculpatory evidence. The evidence not presented was the victim's statement the day after the crime that she did not recognize any of her assailants. Chupp finds special significance in this fact because he is the son of the vic-

tim's nephew and was known to the victim. The State presented evidence that she did not know Chupp very well. The trial court had a basis for concluding that omitting such an out-of-court statement by the victim did not result in an unfair trial, namely, that the victim made the same statement in court under oath. Counsel cannot be deemed ineffective for failing to introduce cumulative evidence.

It was not altogether surprising that the victim could not identify any of the culprits because her assailants covered her eyes with duct tape. The only time she had an opportunity to see them was when they crashed into her bedroom in the dark of night.

### V. *Reasonableness of Sentence*

The seventy-year sentence is manifestly unreasonable, Chupp argues, because his codefendants, Arnold and King, received only thirty-five and forty years respectively. The trial court imposed the maximum sentence for each offense and ordered the confinement conviction to run consecutively. Appellant suggests that the statement of the trial court is inadequate to support the sentence.

■ A sentencing statement is sufficient to enhance a sentence if it meets three requirements. It must identify the mitigating and aggravating circumstances. It must state why each circumstance is mitigating or aggravating. Finally, it must balance the mitigating and aggravating factors. *Robinson v. State* (1985), Ind., 477 N.E.2d 883, 886. These requirements guard against capricious sentencing and provide a basis for appellate review. *Henderson v. State* (1986), Ind., 489 N.E.2d 68, 72.

■ The order book entry indicates the trial court conducted a sentencing hearing and reviewed the pre-sentence report. The court considered the nature and circumstances of the crimes, the risks that appellant would commit future crimes, and the prior criminal record, character and condition of the appellant. The trial court found no mitigating factors and enumerated three aggravating circumstances: Chupp's prior criminal convictions, his status as a parolee, and the age of the victim.

It appears from the pre-sentence investigation and the order book entry that the trial court engaged in the evaluating and balancing process. The court's stated analysis is adequate to support the enhanced sentence.

■ Appellant contends the sentence is manifestly unreasonable because his codefendants received lesser sentences than he did. Appellant bolsters his argument by pointing out that Arnold and King brutalized the victim, and he did not. Appellant fails to observe that his codefendants pled guilty pursuant to plea agreements under which the prosecutor recommended a given prison term in trade for a plea and/or testimony. That the codefendants chose to bargain and Chupp did not does not establish appellant's sentence as manifestly unreasonable.

### VI. *Accused's Absence from Hearing*

■ Appellant was not present in court on August 19, 1982, when the trial court granted the State's request to continue the trial. Appellant asserts granting the continuance was a critical part of the criminal process and that his absence violates due process.

We begin by turning to the words of Justice Cardozo. "So far as the Fourteenth Amendment is concerned, the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence." *Snyder v. Massachusetts*, 291 U.S. 97, 107–108, 54 S.Ct. 330, 333, 78 L.Ed. 674, 679 (1933). However, a trial court's failure to arrange for a defendant's presence does not implicate fairness where the accused's presence "would be useless, or the benefit but a shadow." 291 U.S. at 106–107, 54 S.Ct. at 332.

Appellant admitted his absence caused no prejudice to his defense. Appellate counsel has not identified any prejudice beyond the ambiguous assertion that Arnold and King gained an advantage over his client. This case is unlike *State v. Harden* (1986), Ind., 496 N.E.2d 35, in

which the accused was absent when a taped exhibit of a co-conspirator's statement was played to the jury during deliberations and he could show some prejudice. Appellant's absence from the proceeding where the trial court granted the continuance was not a violation of due process. *United States v. Veatch*, 674 F.2d 1217, 1225 (9th Cir.1981).

The trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.