**John F. MERIWEATHER, Appellant (Defendant),**

v.

**STATE of Indiana, Appellee.**

No. 49A02–9409–CR–520.

Court of Appeals of Indiana.

Nov. 30, 1995.

Transfer Denied Jan. 9, 1996.

Walter E. Bravard, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Louis E. Ransdell, Deputy Attorney General, Office of the Attorney General, Indianapolis, for Appellee.

## OPINION

SULLIVAN, Judge.

John F. Meriweather (Meriweather) appeals his convictions of attempted aggravated

battery, a class B felony;[1] carrying a handgun without a license, a class D felony;[2] and resisting law enforcement, a class A misdemeanor.[3] Meriweather presents three issues for our review, which we restate as follows:

(1) whether the trial court committed reversible error when it convicted him of attempted aggravated battery, in that the crime was not charged nor was it an included offense of a crime which was charged;

(2) whether sufficient evidence of probative value supports his convictions;

(3) whether the trial court committed reversible error in imposing manifestly unreasonable sentences.

We affirm.

The facts most favorable to the trial court's judgment disclose that on October 29, 1993, fights broke out inside the Staten Island Lounge on east 38th Street in Indianapolis. An off-duty, fully uniformed Indianapolis Police Department (IPD) officer, Marvin Jay Barlow, was at the lounge that night helping to provide additional security. Officer Barlow was in the parking lot when he learned of the activity inside. Officer Barlow entered the lounge and attempted to restore order. He broke up the combatants, requested additional police assistance, and began forcing patrons outside into the lounge's parking lot. Officer Barlow noticed that many of the patrons had caps, sweatshirts, and T-shirts with logos that included the phrase "East side." Record at 76. He also noticed that a "few" patrons had similar "north side" paraphernalia. Record at 76. As additional officers arrived on the scene, members of the crowd gathered in the lounge's parking lot and continued to argue with one another.

Manual Hamilton (Hamilton) was among the crowd of people whom Officer Barlow had removed from the lounge. Hamilton was leaning forward over the roof of his girlfriend's car when he heard gunshots behind him. At the same time, his girlfriend told him to "turn around." Record at 99. When he turned in the direction of the shots, he saw Meriweather firing at him. Hamilton ducked, avoiding the gunfire. Officer Barlow, who was by this time once again in the parking lot, heard the first two gunshots. He turned in time to see Meriweather fire three more shots at Hamilton. IPD officer Fred Carpenter also saw Meriweather fire four or five shots at a group of "three to four subjects." Record at 66. Yet another IPD officer, Andrew Starks, also observed Meriweather firing what he described as three to five shots in Hamilton's direction at a "small group of individuals." Record at 55. Investigation later revealed that the car against which Hamilton was leaning was struck by at least three bullets.

When Hamilton realized that Meriweather had expended all of his ammunition, he and at least one other person began chasing Meriweather. Officer Barlow also gave chase while screaming " 'Stop, police!' four or five times ... at the top of [his] voice." Record at 80. Despite the warnings, Meriweather continued to flee. Officer Barlow eventually tackled Meriweather and placed him under arrest. Officers Starks and Carpenter both saw Officer Barlow chase and apprehend Meriweather. Meriweather was wearing a black sweatshirt with the term "North Side" enscripted across the front in white letters. Record at 85.

During the chase, Officer Barlow saw Meriweather drop a handgun a short distance from where he apprehended Meriweather. Officer Barlow recovered that gun, which was a .38 caliber, five-shot revolver containing five empty shell casings. Meriweather did not produce a license to carry the gun.

On November 2, 1993, the State charged Meriweather by information with attempted murder, carrying a handgun without a license, and resisting law enforcement. On May 9, 1994, after submission of the evidence, the trial court found Meriweather guilty of carrying a handgun without a license and of resisting law enforcement. After taking the attempted murder charge

1. See I.C. 35–42–2–1.5 (Burns Code Ed.Repl. 1994).

2. See I.C. 35–47–2–1 (Burns Code Ed.Repl.1994).

3. See I.C. 35–44–3–3 (Burns Code Ed.Repl.1994).

under advisement, the trial judge found Meriweather guilty of attempted aggravated battery as a lesser included offense of attempted murder. She did so reasoning that Meriweather attempted to inflict an injury that created a substantial risk of death. On June 7, 1994, the trial judge sentenced Meriweather on all three counts, enhancing his sentences for attempted aggravated battery and carrying a handgun without a license. The trial judge ordered Meriweather to serve the sentences consecutively.

## I. ATTEMPTED AGGRAVATED BATTERY CONVICTION

■ The issue, as posed by Meriweather, is whether the charge of attempted murder, as phrased, permits a conviction of attempted aggravated battery. The trial court, in entering the conviction, found that Meriweather "attempted to inflict an injury that created a substantial risk of death." Record at 159. The court therefore concluded that Meriweather was "guilty of the B Felony as a lesser included offense." Record at 160. The charge stated that Meriweather attempted to commit murder by "repeatedly shooting a deadly weapon, that is: a handgun, at and toward the person of Manual Hamilton." Record at 11.

Meriweather argues that by " 'closely-tracking' " the language of the murder and attempt statutes in its attempted murder charge, the State precluded a conviction upon attempted aggravated battery as a lesser included offense. Brief of Appellant at 6. This argument understandably relies upon a line of cases beginning with *Jones v. State* (1982) Ind., 438 N.E.2d 972. In that case, our Supreme Court stated:

> "The state may wish to seek conviction of a defendant for a lesser offense, depending upon the ultimate strength of its evidence. By proper drafting, it can preserve the option to seek conviction for the lesser offense, which, if charged within the body of the information, serves the due process guarantee of notice to defendant. [citations omitted] By the same token, the state through its drafting can foreclose as to the

defendant, the tactical opportunity to seek a conviction for a lesser offense. The point is that absolute discretion rests in the state to determine the crime(s) with which a defendant will be charged." 438 N.E.2d at 975.

Both Meriweather and the State cite and rely upon case law which analyzes the matter of included offenses but which does so, almost without exception, in the context of whether a trial court erred in refusing a defendant's instruction upon a lesser included offense. Although such cases, upon first glance, would seem to be of assistance, the matter of instruction entitlement differs from whether, in the final analysis, a conviction of a lesser offense may be entered in light of a particular greater offense as charged.

The instruction cases tend to pick up and discuss collateral and somewhat conflicting considerations, such as whether refusal of the instruction was harmless error; whether the giving of the instruction would have invited or encouraged a compromise verdict; and most difficult to apply, the view that the intent of the State in framing the charge dictates whether a defendant may or may not have the jury consider a lesser included offense. *See Compton v. State* (1984) Ind., 465 N.E.2d 711, 713 (charge of burglary and theft that "quoted the statute almost verbatim" demonstrates that prosecutor was not attempting to seek conviction upon a lesser offense and therefore to give an instruction on criminal trespass and conversion would have invited a compromise verdict); *Sills v. State* (1984) Ind., 463 N.E.2d 228, 235 (murder charge justified refusal of involuntary manslaughter because "[i]t is clear that the state sought only to charge for murder. The defendant cannot inject the lesser offense, since this would allow the jury to return a compromise verdict.").

We deem the solution to the precise issue before us best reached without becoming diverted by whether the instruction cases should control the analysis.[4] Rather, we look to whether Meriweather was placed upon fair notice as to the crime or crimes against which he must defend and whether the crime

---

4. As a practical reality, a lesser offense conviction issue does not arise in a jury setting unless there is an instruction and a verdict form permitting such a conviction.

of which he was convicted fell fairly and logically within the crime of attempted murder, as charged. Nevertheless, the "closely tracking" factor, in assessing whether a particular charge will permit an included offense conviction, is very much present in some of the instruction cases. Those cases, therefore, cannot be, and should not be, totally disregarded.

For example, in *Hoskins v. State* (1990) Ind., 563 N.E.2d 571, 575, the court noted that the State, by the manner in which the charge is drafted, may "foreclose to the defendant the tactical opportunity to seek conviction for a lesser offense. This is most typically accomplished by closely tracking the statutory definition of the offense and by inserting no additional language which might indicate an intention to charge a lesser offense."

Meriweather correctly observes that the charge in *Hoskins* in alleging attempted murder was identical to the charge in this case. *Hoskins* proceeded to hold that the charge closely tracked the statutes and thereby precluded the defendant from obtaining an instruction upon the lesser offense of battery. It is understandable that Meriweather construes the *Hoskins* decision to prevent a conviction of any offense other than attempted murder. In other words, Meriweather contends that because the trial court did not convict for the crime charged, he was entitled to acquittal.

 There are two categories of lesser included offenses in Indiana.[5] The first category entails those offenses which are inherently included in a greater offense. An inherently lesser included offense is one which a person necessarily commits in the course of committing the greater offense. An inherently lesser included offense exists when, by virtue of the legal definitions of the two offenses, it is impossible to commit the great-

er offense without first committing the lesser or when a lesser degree of culpability is required for the lesser offense. *Jones, supra*, 438 N.E.2d 972.

 The second category of lesser included offenses is comprised of those offenses which are "included as charged." In *Maynard v. State* (1986) Ind., 490 N.E.2d 762, 763, Justice Dickson described "included as charged" offenses as those which are " 'committed by reason of the manner in which the greater offense was committed,' if within the factual allegations contained in the charging instrument." [6] Thus, even if it is possible for a defendant to commit the charged crime without necessarily committing the lesser crime, the State may properly convict the defendant of the lesser crime if the facts as alleged in the charging instrument correlate with the elements of the lesser offense. For example, battery may be a lesser included offense to an attempted murder charge if the information alleges a factual physical transgression against the victim so as to satisfy the "touching" element of battery. *Leon v. State* (1988) Ind., 525 N.E.2d 331, 332; *Larry v. State* (1988) Ind., 517 N.E.2d 377, 378; *Johnson v. State* (1984) Ind., 464 N.E.2d 1309, 1310–11.

Until the mid–1980s, Indiana decisions consistently held that an information charging a greater offense was, by necessity, sufficient to charge any "inherently lesser included" offenses. However, as earlier noted, a line of cases emerged which threw into doubt the proper legal analysis to be employed when examining lesser included offenses. The confusion centered around the proper application of the "closely tracking" rule as mentioned above. *Compton, supra*, 465 N.E.2d 711; *Sills, supra*, 463 N.E.2d 228.

The Fourth District of this court in *Slayton v. State* (1984) Ind.App., 471 N.E.2d

---

5. I.C. 35–41–1–16 (Burns Code Ed.Repl.1994) defines an included offense as one that:
"(1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
(2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or

(3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission."

6. Quoting *Jones, supra*, 438 N.E.2d at 974.

1154, reached the following conclusion in light of *Sills* and *Compton:*

> "Under *Sills* and *Compton*, it is not entirely clear when an information charging a greater offense should be found sufficient to charge an 'inherently included' lesser offense. The rule seems to be, however, that when the prosecutor charges the greater offense in language closely tracking the statutory definition of that offense and the prosecutor does not insert additional language showing an intent to charge any lesser offenses, the information must be held to charge only the greater offense." 471 N.E.2d at 1157.

A logical corollary to this holding would seem to foreclose the State from introducing any evidence of a lesser offense committed as part of the greater. It would also seem to preclude the State from obtaining an instruction upon a lesser included offense if the evidence of the greater proves to be less convincing, than originally anticipated, as to the element which distinguishes the greater from the lesser.

We reject any interpretation implying that a "closely tracking" rule applies to cases involving "inherently lesser included" offenses. Indeed, recent decisions from our Supreme Court make it clear that the court misstated itself in *Sills* and in *Compton* to the extent that they made the "closely tracking" rule applicable in cases in which a court determined one offense to be an inherently lesser included offense of the charged offense.[7] *See Wright v. State*, (Nov. 17, 1995) Ind., 658 N.E.2d 563; *Aschliman v. State* (1992) Ind., 589 N.E.2d 1160; *Lynch v. State* (1991) Ind., 571 N.E.2d 537.

In *Lynch*, our Supreme Court vacated a Court of Appeals decision which applied the "closely tracking" rule to preclude a requested instruction regarding involuntary manslaughter because the State charged the defendant with murder. After comparing Indiana's murder and involuntary manslaughter statutes, our Supreme Court noted that because the killing which formed the basis for the murder charge against Lynch was obviously accomplished by a touching, involuntary manslaughter was an inherently lesser included offense of murder. Upon this issue, our Supreme Court concluded as follows:

> "The majority in the Court of Appeals concluded that the prosecutor had drafted the information in such a way as to preclude an instruction on involuntary manslaughter. Although the majority is correct that, under certain circumstances, an information can be drafted to preclude an instruction on a lesser included offense, this is not such a case." 571 N.E.2d at 539.[8]

7. Both *Sills* and *Compton* rely heavily upon *Jones, supra*, 438 N.E.2d 972, a case involving an "included as charged" lesser offense, not an inherently lesser included one. In relying upon *Jones*, the court, perhaps unwittingly, extended the "closely tracking" rule to inherently lesser included offenses. As noted by Judges Garrard and Conover, *see Wright v. State* (1994) 3d Dist. Ind.App., 643 N.E.2d 417, 419–20 (Garrard, J., dissenting), *rev'd*, (1995), 658 N.E.2d 563; *Aschliman v. State*, (1991) 4th Dist.Ind.App., 578 N.E.2d 759, 767 (Garrard, J., dissenting), *vacated*, (1992) 589 N.E.2d 1160; *Lynch v. State* (1990) 3d Dist.Ind.App., 552 N.E.2d 56, 61 (Garrard, J., dissenting), *vacated, supra*, (1991) 571 N.E.2d 537; *Crawford v. State* (1987) 4th Dist. Ind.App., 502 N.E.2d 1361 (Conover, J. dissenting), *trans. denied*, other decisions also extended *Jones* in the same manner as did *Sills* and *Compton*, applying a "closely tracking" rule in cases involving inherently lesser included offenses. *See O'Grady v. State* (1985) 4th Dist.Ind.App., 481 N.E.2d 115, 119, *trans. denied; Lahrman v. State* (1984) 4th Dist.Ind.App., 465 N.E.2d 1162, 1168, *trans. denied; see also Majko v. State* (1987) Ind., 503 N.E.2d 898, 902.

This district cited *Slayton, Crawford*, and *O'Grady* in *Hawk v. State* (1987) 2d Dist.Ind. App., 506 N.E.2d 71, 74. In *Hawk*, we first determined that touching and fondling with intent to arouse sexual desire is not inherently included in the crime of child molestation-sexual intercourse, but rather is an "included as charged" or "possibly included" offense. Thus, as we more fully discuss *infra*, application of a "closely tracking" rule is not improper in such cases.

8. *Contra Mueller v. State* (1988) Ind., 517 N.E.2d 788, 792 (citing *Sills* for the proposition that "when the State chooses to only charge murder it forecloses the included lesser offense of involuntary manslaughter"). *See also Wedmore v. State* (1988) Ind., 519 N.E.2d 546, 547–49.

The *Lynch* decision may be read to recloud the issue. It appears to look to the factual manner in which the alleged murder was committed

In *Aschliman, supra,* the trial court refused a jury instruction tendered by the defendant which would have informed the jury that criminal conversion is a lesser included offense of theft. Our Supreme Court disagreed, determining that criminal conversion is an inherently lesser included offense of theft. After comparing Indiana's theft and criminal conversion statutes, the *Aschliman* court concluded that all of the statutory elements of conversion are part of the statutory definition of theft. Significantly, the court did not examine the charging information in reaching its decision. The *Aschliman* court then determined as follows:

"Although as we noted in *Lynch* ... there may be some circumstances under which an information could be drafted to preclude an instruction on a lesser-included offense, such is not the case where, as here, we are concerned with an inherently lesser-included offense." 589 N.E.2d at 1161.[9]

▮ Those cases which applied a "closely tracking" rule even after first determining that there existed an offense which was inherently included in the greater offense blurred the distinction between included "as charged" lesser offenses and inherently included offenses. If a lesser offense is inherently included in a greater one, by definition any information sufficient to charge the greater offense necessarily charges the lesser. In such a case, a court need not examine the information in any great depth beyond simply ascertaining that it properly charged the greater offense.

On November 17, 1995, our Supreme Court, at least with respect to the giving of instructions, resolved the continuing confusion presented by the various cases. In *Wright, supra,* 658 N.E.2d 563, the court reversed the Court of Appeals decision, *see Wright v. State* (1994) 3d Dist.Ind.App., 643 N.E.2d 417, upon transfer. In doing so, the court held that the wording of the charge "*never* forecloses or precludes an instruction on an inherently lesser included offense." Op. at 137 (original emphasis). Conversely, the court noted that "the State may only foreclose instruction on a lesser offense that is not inherently included in the crime charged by omitting from a charging instrument factual allegations sufficient to charge the lesser offense." Op. at 140. The Supreme Court opinion in this regard overruled numerous prior decisions of that court, most particularly *Compton, supra,* 465 N.E.2d 711, and *Sills, supra,* 463 N.E.2d 228. It also disapproved of holdings of the Court of Appeals which relied upon those cases. Again, suffice it to say that in determining when a defendant is entitled to an instruction upon a lesser offense, *Wright, supra,* 658 N.E.2d 565, is controlling.

In light of the above analysis, we must determine whether attempted aggravated battery is an inherently lesser included offense of attempted murder. If it is, the "closely tracking" rule has no application and the State does not foreclose conviction upon attempted aggravated battery merely because it chose to word its information in a manner which charged only attempted murder. Conversely, if attempted aggravated

rather than to the elements of the two offenses in terms of whether the lesser is necessarily included in the greater. Nevertheless, the case is consistent with the proposition that the "closely tracking" rule is not applicable if the lesser offense is necessarily included in the crime charged.

9. In the wake of *Aschliman* and *Lynch*, this court in *Vincent v. State* (1994) Ind.App., 639 N.E.2d 315 recognized that the "closely tracking" rule is inapplicable in situations involving inherently included lesser offenses.

"Although in some circumstances, the State may draft the information to preclude an instruction on a lesser included offense, such is not the case where we are concerned with

an inherently included offense. [Citation omitted.] In that instance, the information necessarily includes all of the elements of the inherently lesser included offense.... The information which charged Vincent with residential burglary, by stating all of the elements of the elements of residential entry, is sufficient to inform Vincent of the need to defend against this inherently lesser included offense." 639 N.E.2d at 317.

At least one decision has applied the "closely tracking" rule in a case involving an inherently lesser included offense despite *Lynch* and *Aschliman. See Wright v. State* (1994) 3d Dist.Ind. App., 643 N.E.2d 417, 419–20 (Garrard, J., dissenting).

battery is not an inherently lesser included offense of attempted murder, we must examine the information to determine if it is a "possibly included" lesser offense based upon the language of the charge. Only in this second situation may we properly apply the "closely tracking" rule.

■ To determine whether an offense is inherently included, we examine the statutes creating the greater and lesser offenses. *Aschliman, supra,* 589 N.E.2d at 1161; *Lynch, supra,* 571 N.E.2d at 538–39; *Lahr v. State* (1994) 2d Dist.Ind.App., 640 N.E.2d 756, 763, *trans. denied.* An offense is inherently included in a greater offense if all of its statutory elements are part of the statutory definition of the greater offense. *Aschliman, supra* at 1161; *Chanley v. State* (1991) Ind., 583 N.E.2d 126, 130; *Vincent v. State* (1994) 1st Dist.Ind.App., 639 N.E.2d 315, 317; *Pedrick v. State* (1992) 5th Dist.Ind.App., 593 N.E.2d 1213, 1216 *reh'g denied.* Courts traditionally have determined an offense to be an inherently lesser included offense by examining whether if, by virtue of the statutes defining both offenses, it is impossible to commit the greater offense without also committing the lesser. *Abron v. State* (1992) 2d Dist.Ind.App., 591 N.E.2d 634, *trans. denied.*

■ An examination of the statutes involved here leads to the conclusion that attempted aggravated battery is an inherently lesser included offense of the crime of attempted murder. The portion of Indiana's murder statute relevant to this case states that a person commits the crime of murder when he or she "[k]nowingly or intentionally kills another human being[.]" I.C. 35–42–1–1 (Burns Code Ed.Repl.1994). According to I.C. 35–42–2–1.5, aggravated battery occurs when a person "knowingly or intentionally inflicts injury on a person that creates a substantial risk of death or causes serious permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ". Per I.C. 35–41–5–1 (Burns Code Ed.Repl.1994), "[a] person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes

a substantial step toward commission of the crime." Thus, the crime of attempted murder occurs when a person knowingly or intentionally takes a substantial step toward killing another person. Attempted aggravated battery occurs when a person knowingly or intentionally takes a substantial step toward inflicting an injury that creates a substantial risk of death or an injury which would cause serious permanent disfigurement or the protracted loss or impairment of the function of a bodily member or organ.

Two reasons compel our decision that attempted aggravated battery is an inherently lesser included offense of attempted murder. First, one cannot take a substantial step toward knowingly or intentionally killing another person without necessarily taking a substantial step toward inflicting an injury which creates a substantial risk of death or one that would cause the kind of permanent injury required to gain conviction for attempted aggravated battery. Quite logically, a murder victim must necessarily die from some type of injury which creates a substantial risk of death.

■ Second, our cases hold that a crime is inherently included in a greater crime if the lesser crime necessarily contains all of the statutory elements of the greater crime except an intent to commit the greater offense. *See, e.g., Lynch, supra,* 571 N.E.2d at 538–39; *Vincent, supra,* 639 N.E.2d at 317; *Study v. State* (1992) 2d Dist.Ind.App., 602 N.E.2d 1062, 1066, *reh'g. denied.*[10] Here, the crime of attempted aggravated battery necessarily contains all of the statutory elements of attempted murder except for an intent to kill. In reality, the distinction between attempted aggravated battery and attempted murder is seemingly minute. Clearly, murder has at least one element which distinguishes it from attempted aggravated battery—a killing. When, however, as here, both crimes are attempts, quite clearly the victim has neither been killed nor sustained an injury creating a substantial risk of death, disfigurement, or impairment. So, in the abstract, the only distinguishing characteris-

---

10. *See also Weaver v. State* (1991) Ind., 583 N.E.2d 136, 142 (intent was not element which

distinguished murder from voluntary manslaughter; rather, it was the element of sudden heat).

tic between attempted murder and attempted aggravated battery is the resulting harm the assailant intends to inflict upon his or her victim. An assailant attempting murder has an intent to kill, whereas an assailant attempting the crime of aggravated battery has an intent only to inflict an injury which creates a substantial risk of death or one that would permanently disfigure or impair, but not necessarily cause death. Here, proof of the element of firing the weapon with an intent to kill is all that distinguishes attempted murder from attempted aggravated battery. In all other respects, they are the same crime. Again, the element of intent is not to be considered as distinguishing in determining whether one offense is necessarily included in another.

We must conclude that the offense of attempted aggravated battery is an inherently lesser included offense of attempted murder. Accordingly, the information charging Meriweather with attempted murder, by stating all of the elements of attempted murder, is sufficient to inform him of the need to defend against this inherently included offense. Meriweather had notice of all elements constituting the lesser offense found in the judgment. Having reached that conclusion, the "closely tracking" rule urged by Meriweather is inapplicable and the charge permitted a conviction of attempted aggravated battery.

## II. SUFFICIENCY OF THE EVIDENCE

■ Meriweather argues that the State failed to present sufficient evidence of probative value to sustain his convictions for attempted aggravated battery, carrying a handgun without a license,[11] and resisting law enforcement. We disagree.

### A. Attempted Aggravated Battery

■ As discussed above, one commits the offense of attempted aggravated battery when he or she knowingly or intentionally takes a substantial step toward causing an injury that creates a substantial risk of death or would result in the kind of severe injuries specified by I.C. 35–42–2–1.5. Meriweather contends that the State produced insufficient evidence to demonstrate that he intended to harm Hamilton. We disagree.

The evidence of probative value favorable to Meriweather's conviction reveals that he shot five rounds at Hamilton with a .38 caliber handgun, none of which struck Hamilton, though at least three of the rounds struck the car against which Hamilton was leaning. Hamilton testified that Meriweather shot at him, and Officer Barlow testified that he saw Meriweather fire three shots at Hamilton. Officers Capenter and Starks both saw Meriweather fire four or five shots in Hamilton's direction. From this testimony, the trial court properly could conclude that Meriweather did not fire the shots randomly, but rather intended to shoot at and cause Hamilton the kind of serious harm contemplated by the statute.

The evidence is, therefore, sufficient to justify the trial court's determination that Meriweather was guilty beyond a reasonable doubt of attempted aggravated battery.

### B. Resisting Law Enforcement Conviction

■ A person commits the offense of resisting law enforcement if he or she knowingly or intentionally "[f]lees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop[.]" I.C. 35–44–3–3(a)(3) (Burns Code Ed.Repl.1994). The evidence of probative value favorable to the resisting law enforcement conviction here reveals that Meriweather fled after firing at Hamilton. Evidence also reveals that Officer Barlow and Hamilton gave chase, and that Officer Barlow repeatedly shouted at Meriweather to stop. Officer Barlow was clad in his police uniform and was engaged in the execution of his duties as an officer at the point at which he ordered Meriweather to stop.

---

11. Meriweather does not present a cogent argument regarding the sufficiency of his conviction for carrying a handgun without a license. The record is clear that Meriweather did not have a license to carry the .38 caliber handgun Officer Barlow recovered after apprehending him. Thus, sufficient evidence exists from which the trial judge could conclude that Meriweather was guilty beyond a reasonable doubt of the crime of carrying a handgun without a license.

Meriweather maintains that the evidence merely discloses that he was "fleeing from Manual Hamilton and his friends, not from Officer Barlow" and that he "made no further resistance" as soon as he realized that one of his pursuers was a policeman. Brief of Appellant at 15. Again, such argument asks us to reweigh evidence and re-evaluate witness credibility. The above evidence is sufficient to justify the trial court's determination that Meriweather was guilty beyond a reasonable doubt of resisting law enforcement.

### III. ALLEGED SENTENCING ERRORS

▮ Meriweather contends that the trial court erred in sentencing him to twenty-four years imprisonment. The trial judge imposed the presumptive ten year sentence for attempted aggravated battery,[12] enhanced by ten years for aggravating circumstances. For the class D felony of carrying a handgun without a license, the trial judge sentenced Meriweather to one and one-half years,[13] enhanced by another one and one-half years for aggravating circumstances. The trial judge also sentenced Meriweather to one year for resisting law enforcement.[14] In addition, the trial judge ordered Meriweather to serve the sentences consecutively.

The trial judge's sentencing statement reads as follows:

"The aggravating circumstances [for enhancing the sentences] being that Mr. Meriweather was on parole at the time of this event and Mr. Meriweather's criminal history. I will order that those sentences be served consecutively to one another ..., aggravating circumstance for that being simply Mr. Meriweather's continued violent criminal history and use of weapons. It's—unfortunately it's to the point, Mr.

Meriweather, where I don't think you can live out—I don't think it's fair to society for the Court to let you live out among society. It's too dangerous. I find there are no mitigating factors, and clearly the aggravating factors outweigh anything else." Record at 176–77.

Meriweather made no objection when the court announced its reasons for the sentences, nor did he request a more detailed statement.

▮ It is within the trial court's discretion to determine whether it will increase or decrease a crime's presumptive sentence because of aggravating or mitigating circumstances. *Boyd v. State* (1991) Ind., 564 N.E.2d 519, 524; *Brown v. State* (1987) Ind., 512 N.E.2d 173, 177; *Fuller v. State* (1994) 2d Dist.Ind.App., 639 N.E.2d 344, 349. We will not revise or reverse a statutorily authorized sentence unless it is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.Appellate Rule 17(B)(1); *see also Duvall v. State* (1989) Ind., 540 N.E.2d 34, 36; *Fuller, supra* at 349; *Serano v. State* (1990) 1st Dist.Ind.App., 555 N.E.2d 487, 494, *trans. denied.* A sentence is manifestly unreasonable if no reasonable person could find it appropriate to the particular offense and offender involved. App.R. 17(B)(2). *See also Wilson v. State* (1992) Ind., 583 N.E.2d 742, 743; *Beno v. State* (1991) Ind., 581 N.E.2d 922, 924.

The criteria listed in I.C. 35–38–1–7.1(b) and (c) (Burns Code Ed.Supp.1995) illustrate some examples of the facts that, if found to exist, either mitigate or aggravate an offense. Here, the trial court's sentencing statement specifically lists two aggravating circumstances; the fact that Meriweather was on parole at the time of the instant offenses and

---

**12.** Aggravated battery is a class B felony. I.C. 35–42–2–1.5. Pursuant to I.C. 35–41–5–1, an attempt to commit aggravated battery is also a class B felony. The presumptive sentence for attempted aggravated battery as a class B felony is ten years, to which the trial judge may add no more than ten years for aggravating circumstances. I.C. 35–50–2–5 (Burns Code Ed.Repl. 1994).

**13.** Carrying a handgun without a license is a class D felony. I.C. 35–47–2–1. I.C. 35–50–2–7

(Burns Code Ed.Repl.1994) provides that a person who commits a Class D felony shall be imprisoned for a fixed term of one and one-half years, with not more than one and one-half years added for aggravating circumstances.

**14.** Resisting law enforcement is a class A misdemeanor. I.C. 35–44–3–3. A person who commits a class A misdemeanor shall be imprisoned for a fixed term of not more than one year. *See* I.C. 35–50–3–2 (Burns Code Ed.Repl.1994).

his prior criminal history. There is no question that both factors are proper aggravating circumstances. I.C. 35–38–1–7.1(b); *Dumbsky v. State* (1987) Ind., 508 N.E.2d 1274, 1278; *Fuller, supra,* 639 N.E.2d at 349.

■■■■ Meriweather argues that the trial court refused to find any mitigating circumstances, pointing out that the trial judge did not consider his youth or his remorse. However, a sentencing judge is not obligated to explain why he or she has chosen not to make a finding of mitigation. *Hammons v. State* (1986) Ind., 493 N.E.2d 1250, 1254, *reh'g denied.* Further, the record here is devoid of any evidence that such circumstances exist. The pre-sentence report did not find any mitigating circumstances, nor did Meriweather's trial counsel suggest any at the sentencing hearing. Meriweather was twenty-three years old at the time of the instant offense, an age at which his "youth" clearly does not require the finding of a mitigating factor.

■■■■ Meriweather also maintains that the trial court improperly used "the very elements of the crimes" to enhance his sentences, to wit: his "use of a weapon." Brief of Appellant at 23. Although those facts which constitute a material element of a crime may not constitute an aggravating circumstance to support an enhanced sentence absent something special about the way in which that element of the crime was committed, *St. John v. State* (1988) Ind., 523 N.E.2d 1353, 1359; *Townsend v. State* (1986) Ind., 498 N.E.2d 1198, 1201, such a proposition does not apply with regard to the enhancement here because the trial court did not cite an element of any of the crimes for which Meriweather was convicted as aggravating circumstances. A careful reading of the trial court's sentencing statement discloses that the trial judge did not enhance Meriweather's sentences because he used a weapon during the commission of the instant offense. Rather, the trial judge cited the fact that Meriweather was on parole at the time of the instant offense as well as his lengthy criminal history as the factors she considered in enhancing Meriweather's sentences. Thus, we find no fault with the factors the trial court identified in enhancing Meriweather's sentences.

■■■■ Meriweather further contends that the sentencing statement in this case inadequately explains the factors the trial court considered in enhancing his sentences and in sentencing him to consecutive terms. We disagree.

■■■■ When the trial court exercises its discretionary power to enhance a presumptive sentence, the record must disclose what factors it considered to justify such a sentence. I.C. 35–38–1–3(3) (Burns Code Ed. Repl.1994); *Boyd, supra,* 564 N.E.2d at 524; *St. John, supra,* 523 N.E.2d at 1358; *Maynard v. State* (1987) Ind., 513 N.E.2d 641, 648; *Townsend, supra,* 498 N.E.2d at 1201; *Frappier v. State* (1983) Ind., 448 N.E.2d 1188, 1189; *Dockery v. State* (1987) 4th Dist.Ind.App., 504 N.E.2d 291, 297. Our courts have held that the statement must: (1) identify all of the significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is considered to be mitigating or aggravating; and (3) show that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances in order to determine if the aggravating circumstances offset the mitigating circumstances. *See Boyd, supra,* 564 N.E.2d at 519; *St. John, supra,* 523 N.E.2d at 1358; *Townsend, supra,* 498 N.E.2d at 1201. Such a statement is valuable and often necessary for a reviewing court because it reveals the grounds which the trial judge considered when imposing sentence and thus enables the reviewing court to determine the reasonableness of the sentence imposed. *Henderson v. State* (1986) Ind., 489 N.E.2d 68, 71–72; *Page v. State* (1981) Ind., 424 N.E.2d 1021, 1023; *Abercrombie v. State* (1981) 275 Ind. 407, 417 N.E.2d 316, 319; *see also Linger v. State* (1987) 4th Dist.Ind. App., 508 N.E.2d 56, 63.

■■■■ While some statements are sufficiently specific in and of themselves, others are conclusory and must be substantiated by specific facts. Indeed, Meriweather correctly recognizes that the mere recitation of statutory language is insufficient to support an

enhanced sentence. *Rabadi v. State* (1989) Ind., 541 N.E.2d 271, 277; *Dudley v. State* (1985) Ind., 480 N.E.2d 881, 905; *Shoup v. State* (1991) 2d Dist.Ind.App., 570 N.E.2d 1298, 1306, *trans. denied; Stewart v. State* (1991) 3d Dist.Ind.App., 567 N.E.2d 171, 175–76, *trans. denied.* For example, as here, if a defendant has a history of criminal activity, the trial court should recite the incidents comprising such activity. *St. John, supra,* 523 N.E.2d at 1358; *Hammons, supra,* 493 N.E.2d at 1254; *Farina v. State* (1982) Ind., 442 N.E.2d 1104, 1106. Nevertheless, in certain situations in which a trial court states permissible reasons for enhancing a sentence but merely fails to do so with sufficient particularity, our Supreme Court has determined that the consequent error does not mandate remand. *Beasley v. State* (1983) Ind., 445 N.E.2d 1372, 1375; *Brown v. State* (1983) Ind., 453 N.E.2d 232, 234; *see also Stewart, supra,* 567 N.E.2d at 175. This is such a situation. As our Supreme Court stated in *Adkins v. State* (1989) Ind., 532 N.E.2d 6, 9, a remand in this situation "to articulate the aggravating circumstance of a history of criminal activity would be pointless." [15] "When the record indicates that the trial judge engaged in the evaluative processes but simply did not sufficiently articulate his reasons for enhancing sentence and the record indicates that the sentence imposed was not manifestly unreasonable, then the purposes underlying the specificity requirement have been satisfied." *Henderson, supra,* 489 N.E.2d at 72. *Accord Duvall, supra,* 540 N.E.2d at 36; *Rabadi, supra,* 541 N.E.2d at 277; *Adkins, supra,* 532 N.E.2d at 9; *Chupp v. State* (1987) Ind., 509 N.E.2d 835, 839; *Harris v. State* (1993) 1st Dist.Ind. App., 616 N.E.2d 25, 32, *trans. denied; Kollar v. State* (1990) 3d Dist.Ind.App., 556 N.E.2d 936, 943, *trans. denied; Hunt v. State* (1990) 3d Dist.Ind.App., 550 N.E.2d 838, 845, *trans. denied. Contra Erby v. State* (1987) Ind., 511 N.E.2d 302; *Farina, supra,* 442 N.E.2d 1104.

In a case such as this one, it would indeed be pointless and unnecessary to remand for a more specific sentencing statement with regard to each of the two factors used to enhance Meriweather's sentence because both are readily discernible from a brief review of the record. A review of the facts upon which those determinations were made does not require us to speculate with regard to the factual basis for the judge's decision. The fact that Meriweather had a "criminal history" requires only a brief review of the record to ascertain its factual predicate. An examination of the pre-sentence report in the record reveals Meriweather's lengthy record of unlawful activity, which includes juvenile true findings for theft, criminal recklessness, robbery, and burglary, and adult convictions for resisting law enforcement, criminal recklessness and battery.[16] In addition, the prosecutor's comments at the sentencing hearing also highlight Meriweather's criminal record. Similarly, the fact that Meriweather was on parole at the time he committed the instant offense requires only an examination of the pre-sentence report and the record to verify its factual basis. In certain situations, the specific facts upon which a trial judge predicates a finding of aggravating circumstances necessary to enhance a sentence are not so readily ascertainable from the record, if at all. As discussed above, such is not the case with either of the two aggravating circumstances found here.

The sentencing statement here clearly demonstrates that the trial judge engaged in the required evaluative process, ultimately

---

**15.** When faced with a factual situation in which the trial court failed to sufficiently articulate each crime comprising a defendant's "prior criminal record", our Supreme Court in *Deamus v. State* (1985) Ind., 479 N.E.2d 1319, 1323, found that deficiency to be a "trivial obstacle" to its review. The court continued that it was "immediately clear" that the defendant had "several prior felony convictions, convictions for offenses while on probation, and a conviction for an offense in which bodily injury was inflicted on a victim." *Id. Accord Gunter v. State* (1993) 3d Dist.Ind.App., 605 N.E.2d 1209, 1212, *trans. denied.*

**16.** Compare *St. John, supra,* 523 N.E.2d at 1358–59, in which the trial judge cited the defendant's "'prior record'" as an aggravating circumstance. On appeal, our Supreme Court remanded for more specificity using a *Henderson*—type analysis after determining that nothing in the record revealed evidence of a prior criminal record or that the trial judge examined the presentence report.

determining that she found no mitigating circumstances and that "clearly the aggravating factors *outweigh* anything else." Record at 177 (emphasis supplied). Moreover, the record here affirmatively discloses that the sentence imposed was not manifestly unreasonable. Meriweather clearly had a substantial juvenile record and criminal history. In addition, he committed the instant offense only two months after being released from prison and placed on probation. Under such circumstances, we cannot say that the sentence Meriweather received was such that no reasonable person could find it appropriate to either him or his offenses.

 Meriweather finally contends that the sentencing statement is insufficient to justify the trial court's order that Meriweather serve the sentences consecutively. This argument also fails. A trial court has wide discretion in determining whether imprisonment for multiple offenses should be served consecutively. *Pearson v. State* (1989) 1st Dist.Ind.App., 543 N.E.2d 1141, 1144. Just as with the factors used to enhance a sentence, the record must also identify the relevant factors which underlie a decision to order consecutive sentences. *Wethington v. State* (1990) Ind., 560 N.E.2d 496, 510; *Lindsey v. State* (1985) Ind., 485 N.E.2d 102, 108; *Richardson v. State* (1985) Ind., 481 N.E.2d 1310, 1314; *Shippen v. State* (1985) Ind., 477 N.E.2d 903, 905; *Pyle v. State* (1985) Ind., 476 N.E.2d 124, 127; *Taylor v. State* (1982) Ind., 442 N.E.2d 1087, 1092.

Here, the trial judge cited Meriweather's "continued violent criminal history and use of weapons" as the factor supporting the imposition of consecutive sentences. Record at 176-77. This is a proper factor to order the sentences served consecutively. We note also that this is not merely a citation to Meriweather's criminal record. Rather, it specifically notes the fact that Meriweather perpetrated his earlier crimes under particu-larly violent circumstances, including instances in which he had used a knife and another in which he used a gun.[17]

Because the record here reveals that the trial judge engaged in the required evaluative processes and that the sentence she imposed was not manifestly unreasonable, we see no reason to remand this case for a more detailed sentencing statement. Further, we recognize that had Meriweather presented the specificity issue at the sentencing hearing or in a motion to correct errors, the trial court no doubt could have specified with greater particularity the factual predicate for its enhancement.

The judgment of the trial court is affirmed.

FRIEDLANDER and BARTEAU, JJ., concur.

---

17. The trial court's finding upon this point does not, in our view, violate the well-settled rule that the trial court may not either enhance a defendant's sentence nor order sentences served consecutively by citing an element of the instant offense. Indeed, although Meriweather argues that the trial judge improperly cited the fact that he used a weapon in imposing consecutive sentence, it is clear to us that the phrase "and use of weapons" refers to his past history of such activity and not to the instant set of offenses. The record reveals several earlier crimes, one of which involved a knife and another of which involved a handgun.