Brian S. BOYD, Appellant,

v.

STATE of Indiana, Appellee.

No. 84S00–8801–CR–0016.

Supreme Court of Indiana.

Jan. 4, 1991.

Daniel L. Weber, Vigo County Public Defender, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Following a jury trial, appellant, Brian Boyd, was convicted of criminal confinement, I.C. 35–42–3–3(2), a Class B felony; criminal deviate conduct, I.C. 35–42–4–2(1), a Class A felony; and two counts of rape, I.C. 35–42–4–1(a)(1), both Class A felonies. Appellant received the presumptive ten-year sentence for the Class B felony, and an aggravated forty-year sentence for each Class A felony, all sentences to be served concurrently.

Appellant now brings this direct appeal specifying the following trial court actions as error:

(1) Refusing to give tendered defense instructions concerning the defense of mistake.

(2) Giving the State's tendered instruction that the defense of duress was not available.

(3) Limiting the testimony of defense witnesses Ronald Londo and Cynthia Brown describing the victim's licentious conduct at a tavern before her abduction by appellant.

(4) Permitting cross-examination of defense witness Ronnie Londo with regard to past criminal convictions when a proper foundation had not yet been established.

(5) Failing to consider evidence of mitigating circumstances when sentencing.

On the evening of October 30, 1986, D.C., the victim, visited the home of Mike Brown in order to invite Mike and his cousin Amy to a Halloween party. While she was visiting with the Browns, appellant, whom the victim had never met, and his father, Tom Boyd, arrived. D.C. knew Tom Boyd, as he had lived with D.C. and her fiance, Don Habbyshaw, for a few weeks. The victim testified that she drank one wine cooler while at the Browns' house. D.C. then announced that she was leaving and might stop somewhere and have a drink before she went home. Tom Boyd and appellant suggested that they all go to the Joker Tavern. Tom Boyd and appellant proceeded to the Joker in one car while D.C. and Mike Brown's friend John went in D.C.'s car. The victim testified that she drank about a mug and a half of beer from a pitcher they bought at the Joker.

D.C. then informed Tom Boyd and appellant that she was leaving to go to a bar called the Cowshed where she was going to have a couple of dances and go home. D.C. went to the Cowshed alone. She testified that she ordered some ice water and then Tom Boyd and appellant arrived. D.C. stated that she was dancing with someone on the dance floor when Tom Boyd tried to cut in and she told him "no, not now." According to the victim, Tom Boyd stormed off the dance floor. D.C. left shortly thereafter. She stated that Tom Boyd followed her outside the Cowshed and grabbed her roughly by the shoulders and told her that "he didn't appreciate the way I treated him in there." The victim told him to leave her alone and she drove home.

When she got home, she informed her fiance, Don Habbyshaw, about what Tom Boyd had said to her. She and Don were upstairs in the bedroom when they heard a knock at the door and Don went to answer the door. Before he opened the door, Don informed D.C. that it was Tom Boyd at the door. When Don answered the door, D.C. heard Don shout and she heard some things fall. She then ran into the living room, at which time Tom Boyd grabbed her and threw her to the floor and held a knife to her neck. D.C. stated that as he held the knife to her neck, he told her he was going to rape her and kill her like he had killed Don. With the knife still at her throat, Tom Boyd removed her shorts and panties and started raising her sweatshirt.

Appellant then entered the living room and Tom Boyd asked if Don was dead. Appellant stated that he was not yet dead but was dying. Tom Boyd told appellant to do whatever he had to do to "finish him off." Appellant then informed Tom Boyd that he had taken a gun away from Don and that Don was dead. As Tom Boyd was fondling D.C., however, the back door slammed. The victim testified that appellant then went running toward the back of the house and returned a few minutes later and stated that Don had gotten away. Appellant and Tom Boyd then grabbed the victim and dragged her out to Tom's car. The victim started to fight and yell, but Tom Boyd started to hit her in the head with hard blows. Appellant interceded and stopped Tom Boyd from hitting the victim in the head any further. The victim was put in the rear of the hatchback car with Tom Boyd, and appellant began driving.

While appellant was driving, Tom Boyd raped and sodomized the victim in the back of the car. When they arrived in a secluded spot in the country, the victim testified that she was forced to perform fellatio upon Tom Boyd while appellant had anal intercourse with her. This went on for about five minutes and then appellant had vaginal intercourse with the victim. D.C. stated that appellant then walked around while she was forced to perform fellatio upon Tom Boyd while he inserted his fingers in her vagina and rectum. Appellant then got back inside the car and ordered D.C. to move up to the front of the car, at which time he raped her again.

A short while later, appellant turned on the car radio and the stabbing death of D.C.'s fiance was announced over the radio. Tom Boyd immediately began apologizing to D.C. Tom Boyd then asked appellant for the gun, and after appellant handed it to him, Tom threatened to commit suicide.

D.C. stated that if they would let her go, she would tell the police that appellant had nothing to do with any of this. Tom Boyd drove them to appellant's trailer. D.C., appellant and his wife went to the police station, where the victim informed Detective Hugh Crawford that she had been raped. D.C. testified that she did not implicate appellant in the rape at that time because his presence at the police station intimidated her. After she was taken to the hospital, however, she informed Dr. Eric Bennett that she had been raped by two men. She then told Detective Crawford of appellant's involvement.

■ Following the evidence, the trial court refused five defense instructions explaining the manner in which the jury should apply the defense of mistake of fact to the particular charges, but the court did give appellant's instruction No. 1, which was a general statement of the law regarding mistake of fact. That general instruction reads as follows:

> The defense of mistake of fact is defined by law as follows: It is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for the commission of the offense. If you find the Defendant was reasonably mistaken about a fact and that the mistake prevented the Defendant from forming the intent to commit the offense with which he is charged, you should find the Defendant not guilty.

The first sentence of the instruction tracks the statute defining the defense. I.C. 35–41–3–7. In reviewing a trial court's decision to grant or refuse a tendered instruction, the test applied is 1) whether the instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Reinbold v. State* (1990), Ind., 555 N.E.2d 463.

■ In this instance, the trial court did not commit error in rejecting the five tendered instructions on the defense of mis-

take of fact as there was no evidence in the record to support the giving of the instructions. Appellant points to the testimony of witnesses Ronald Londo and Cynthia Brown concerning the victim's behavior in the Joker Tavern as providing the evidentiary predicate for these five instructions. Londo and Brown each testified that they were in the Joker Tavern on the evening of October 30, 1986, and observed D.C.'s behavior in the bar. They stated that the victim was very intoxicated and was sitting in people's laps and making obscene gestures. Londo testified that the victim approached him and asked if he wanted to go out and have a little fun. Appellant asserts that this testimony describing the victim's conduct in the bar constitutes evidence suggesting that he was reasonably mistaken as to whether the victim consented to the sexual conduct.

A review of the facts surrounding the victim's abduction, however, shows that none of the testimony provided by Londo and Brown supports the giving of appellant's instruction concerning the defense of mistake of fact. Tom Boyd grabbed the victim and forced her to the ground at knifepoint while threatening to take her life. He informed D.C. that he was going to rape and kill her. While she was being attacked, she was informed that her fiance was dead. The victim was then dragged by her arms and legs from her home. She vigorously resisted her abduction until she was dazed by several blunt blows to the back of the head. The testimony of Londo and Brown concerned conduct that occurred hours before the criminal conduct in question. The freewheeling, aggressive behavior of D.C. in the Joker Tavern, as described by them, was not such as would lead one to believe that D.C. consented to this abduction and subsequent sexual attack, hours later and employing such great force and violence.

Indeed, the evidence produced at trial did not provide the requisite predicate for any instruction on the issue of mistake of fact. Appellant received a benefit to which he was not entitled when the trial court chose to give the general instruction concerning

mistake of fact as it allowed defense counsel to utilize the mistake of fact instruction as a cornerstone of his final argument and as a springboard to other lines of argumentation. If such an instruction regarding mistake of fact were warranted by the evidence on the record, we might agree that the more specific and precise instructions should have been given to render the jury deliberations on the issue more pointed and meaningful. In this instance, however, the evidence on the record did not support the giving of any instructions on the issue of the defense of mistake of fact and the trial court thus did not commit error warranting reversal of these judgments when refusing the more precise ones.

Appellant next contends that the trial court erred in giving the State's final instruction No. 4 which read:

It is no defense to the crimes of Criminal Confinement, Rape, and Criminal Deviate Conduct that the Defendant was compelled to engage in the prohibited conduct by threat of serious bodily injury to himself or another person.

As previously stated, the test applied in reviewing a trial court's decision to grant or refuse an instruction is 1) whether the instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Reinbold,* 555 N.E.2d 463.

The State's instruction informed the jury that the defense of duress was unavailable to appellant because, by statute, such a defense is precluded when an offense against the person has been committed. Appellant, however, never asserted the defense of duress. Further, there is no evidence in the record to support the giving of such an instruction. The State points to Boyd's statement of November 1, 1986, where he informed the police that he engaged in the sex acts with the victim "basically to please his father." This statement, however, does not provide any evidence that appellant was compelled to engage in the prohibited conduct out of fear of his father. The trial court erred in giving the State's instruction concerning the unavailability of the defense of duress as there was no proof on that subject.

Instruction errors do not, however, inevitably require a reversal of the court's judgment. Instructions which fail to state all basic elements of the offense charged, or which permit conviction on evidence of a lesser weight than contemplated by law, or which shift the burden from the State to the defendant, are examples of plain error which do prejudice the substantial rights of the defendant and require reversal. *Smith v. State* (1984), Ind., 459 N.E.2d 355; *Beneks v. State* (1934), 208 Ind. 317, 196 N.E. 73. On the other hand, instructions which incorrectly caution a jury in the manner of considering specific items of evidence, when considered in light of other correct general instructions and a plethora of evidence of guilt, while confusing and misleading, do not prejudicially affect substantial rights and thus do not warrant reversal. *Battle v. State* (1981), 275 Ind. 70, 415 N.E.2d 39. Further, on appeal, the burden is upon appellant to show that kind of harm requiring reversal. *Wilkoff v. State* (1933), 206 Ind. 142, 185 N.E. 642. Here, while there was no factual predicate for the instruction on the unavailability of the defense, the instruction accurately reflected the law as far as it went. It was superfluous and did no prejudice to appellant's substantial rights.

Appellant asserts that the trial court erred in limiting the testimony of witnesses Ronnie Londo and Cynthia Brown concerning the conduct of the victim at the Joker Tavern. Appellant maintains that granting the State's motion in limine with respect to the testimony of Londo and Brown unfairly chilled appellant's right to present evidence to impeach the victim's testimony, despite the fact that the court later reversed its decision on this motion in limine. Appellant argues that the court's rulings made it unclear to him what testimony would be allowed and what would not be allowed.

On July 16, 1987, the trial court granted the State's motion in limine concerning the testimony of witnesses Londo and Brown. Following the testimony of these two witnesses at an offer to prove, however, the trial court reversed its decision on the motion in limine with respect to the testimony of Londo and Brown. Thus, at trial, Londo and Brown were able to testify fully as to the victim's behavior at the Joker Tavern as there were no objections during the direct examination of either witness.

The granting of a motion in limine is not a final ruling upon the admissibility of evidence. The purpose of a motion in limine is to prevent the proponent of potentially prejudicial matter from presenting such matter to the jury before the trial court has had a chance to rule upon its admissibility in the context of the trial itself. *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475. No issue is raised on appeal regarding an alleged violation of a motion in limine. *Taylor v. State* (1986), Ind., 496 N.E.2d 561. Appellate review in this instance would have to be based on the trial court's exclusion of evidence at trial. The record, however, shows that there were no objections to any of the testimony proferred by Londo or Brown. Further, appellant does not cite to any specific infringements upon the witnesses' testimony. Thus, we find that the testimony of Londo and Brown was not unnecessarily constrained. Any vestigial restraint upon defense counsel at trial from the prior ruling would be no more impermissible than the restraint imposed by the rules of evidence and the readiness of the trial judge to enforce them.

Appellant next contends that the trial court erred in allowing the State to cross-examine Ronnie Londo regarding his prior criminal convictions without first establishing a sufficient foundation. On cross-examination, the prosecuting attorney asked Londo if he was the same Ronnie Londo that was convicted of burglarizing a grocery store in Illinois. After initially refusing to answer, Londo stated that he had been convicted of burglary. Proof of relevant criminal convictions to impeach a witness may be made on cross-examination by asking that witness whether such convictions occurred. Such questions must be specific so as to demonstrate relevance and good faith on the part of the examiner. *Ashton v. Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210. Where the witness admits to the conviction, the cross-examiner need not lay a foundation for proof by copy or record. McCormack On Evidence, § 43 at 97 (1984). A record of the witness's conviction is to be introduced only if the witness denies being convicted or claims not to remember. *Dotterer v. State* (1909), 172 Ind. 357, 88 N.E. 689. The prosecuting attorney directed Londo's attention to a particular crime and his admission of this conviction was sufficient; thus there was no need to lay a foundation for the admission of the record of the conviction.

Finally, appellant claims that the trial court erred at the time of sentencing when it refused to find mitigating circumstances established by clear evidence. The trial court imposed three forty-year sentences for the Class A felony convictions. The additional ten years was added to the presumptive thirty-year sentence applicable to each due to aggravating circumstances. It is within the discretion of the trial court to determine whether the presumptive sentence for a crime will be increased or decreased because of aggravating or mitigating circumstances. *Brown v. State* (1987), Ind., 512 N.E.2d 173. However, when the trial court uses this discretionary power to enhance a presumptive sentence, the record must disclose what factors were considered to justify such a sentence. *Maynard v. State* (1987), Ind., 513 N.E.2d 641.

The trial court's statement explaining its rationale for imposing an enhanced sentence must contain the following three elements:

(1) It must identify all significant mitigating and aggravating circumstances—a failure to find either when clearly supported by the record may reasonably give rise to a belief that they were overlooked, hence not properly considered. (2) It must include the specific

reason why each circumstance is mitigating or aggravating. (3) The mitigating circumstances must be weighed against the aggravating factors in order to determine if the aggravating circumstances offset the mitigating circumstances. Some articulation of this balancing process must be made in the record by the trial judge.

*Jones v. State* (1984), Ind., 467 N.E.2d 681, 683 (citations omitted).

At sentencing, the trial judge cited such aggravating circumstances as appellant's criminal history and his violation of parole. The trial judge also cited the brutal misconduct in the present case and stated that appellant was a person in need of correctional treatment that could best be provided by commitment to a penal facility. The trial judge stated that he could find no mitigating circumstances to offset these aggravating circumstances.

Appellant claims that the trial court failed to recognize the following factors as mitigating circumstances: 1) appellant did not contemplate that serious harm would occur; 2) such circumstances are unlikely to recur; 3) the victim induced the offense; 4) appellant acted out of fear of his father; 5) there was evidence that appellant would respond affirmatively to probation; 6) appellant offered to attempt restitution; and 7) appellant had supported his wife and daughter and imprisonment is resulting in hardship to his dependents. With respect to the first six mitigating circumstances listed by appellant, we find that they are not clearly supported by the record. Thus, it cannot be said that they were overlooked or not properly considered.

However, there is testimony in the record supporting appellant's claim that his imprisonment would result in hardship to his dependents. Appellant's wife, Sue Boyd, testified that appellant had supported her and their three-year-old child throughout their marriage. The fact that the trial judge stated that he could find no mitigating circumstances in this case suggests that he overlooked this evidence of appellant's familial support and failed to give proper weight to that mitigating circumstance. Even if the trial judge had correctly recognized this mitigating factor and accorded it some mitigating weight, we are satisfied that the outcome of the balancing process would not have been different, and in this regard note that the court did not order consecutive sentences.

The convictions and the sentences are affirmed.

SHEPARD, C.J., and GIVAN, DICKSON and KRAHULIK, JJ., concur.