Orlando B. **MARTIN**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A05–9306–CR–205.

Court of Appeals of Indiana,
Fourth District.

June 30, 1994.

Albert E. Marshall, Jr., Superior Court of Lake County, Appellate Div., Crown Point, for appellant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Indianapolis, for appellee.

RILEY, Judge.

## STATEMENT OF THE CASE

Defendant–Appellant Orlando B. Martin (Martin) appeals from his conviction for murder, a class A felony.[1] We affirm.

## ISSUES

■ Martin raises four issues for our review. We address three of these issues[2] which we re-state as follows:

1. Whether the trial court committed reversible error when it admitted into evidence two handguns.

2. Whether the trial court committed reversible error when it allowed the victim's dentist to testify regarding the physical identity of the victim's skeletal remains.

3. Whether the trial court committed reversible error when it denied Martin's motion for a new trial based on newly discovered evidence.

## FACTS AND PROCEDURAL HISTORY

Martin was charged by information with murder, a class A felony. Martin was found guilty as charged in a trial by jury and sentenced to a forty year presumptive sentence.

The record reveals that Martin's teenage daughter, Sharon, was injured on July 2, 1990, at her high school. Apparently, Sharon and an unidentified boy were involved in some type of sexual activity when Sharon experienced an epileptic seizure. Allegations of rape were made; however, no arrests occurred. The seizure led to an aneurism to Sharon's brain and she died on August 2, 1990. After Sharon's death, Martin and his friend Elston Pickford, enlisted the help of LaTanya Means to identify the boy Sharon was with at the time of her attack. LaTanya later provided Martin with the names of two fellow students, Shawn Lige and Donald Stewart.

Subsequently, Pickford came to LaTanya's home, provided her with a car and asked her to locate Donald Stewart. LaTanya complied and eventually delivered Stewart back to her house. Pickford, Martin and Stewart later left LaTanya's house and went to a wooded area. Pickford observed Martin walking Stewart into the woods with a gun. Pickford then heard a scream and two shots.

Stewart's mother eventually became worried when her son did not return home and contacted the local police and later the Federal Bureau of Investigation. She informed the police that her son had received threats connected to rumors that he was involved with the rape of a girl at the local high school.

During the course of the investigation, police went to the home of Martin. Martin produced a handgun which the police took into their possession. Later, after Martin's arrest in connection with the murder of Donald Stewart, Martin's girlfriend gave F.B.I. agents a brown paper bag that she said Martin had given her prior to his arrest. The bag contained a second gun and a car rental contract. Martin's girlfriend had rented a Pontiac 6000 for two days late in August, the same time the crime was committed. Martin's girlfriend testified that Martin had access to the car.

Pickford was also arrested at which time he divulged the whereabouts of Donald Stewart's remains. Agents found a decomposed body at that location. Stewart had been shot in the head. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. Admissibility of Weapons

Martin argues that the guns were improperly admitted because "the weapons were never tied to the killing of Donald Stewart [the victim] and their admittance was highly prejudicial." Appellant's Brief at 6; 8–10.

---

1. IND.CODE 35–42–1–1 (1992 Supp.).

2. Martin raised a fourth issue in the summary of the argument section of his brief: Whether the trial court erred by giving the tendered instruction on aiding and abetting. However, Martin did not address this issue separately in the argument section of his brief. Martin has therefore waived this issue because he failed to offer any citation to authority in support of his contention. Ind.Appellate Rule 8.3(A)(7).

During the investigation of Donald Stewart's death, two weapons were uncovered by the F.B.I. At trial, two handguns were admitted; a .357 Magnum which Martin gave F.B.I. agents during a search of his home, and a .32 caliber revolver that Martin's girlfriend Clotill Taylor turned over to the F.B.I. Martin had given the gun, containing four live rounds and two empty chambers, to Taylor in a paper bag after the murder and shortly before his arrest.

■ The State initially argues that this allegation of error is waived because Martin's counsel failed to make a timely objection at trial. It is incumbent upon a defendant to object to the introduction of the challenged evidence at trial and specify the grounds upon which the objection is premised. *Abner v. State* (1985), Ind., 479 N.E.2d 1254, 1259. It is well-settled that "when a defendant does not properly bring an objection to the trial court's attention so that the trial court may rule on it at the appropriate time, he is deemed to have waived that possible error." *Ingram v. State* (1989), Ind., 547 N.E.2d 823, 829.

■ Martin filed a pretrial motion *in limine* to suppress all weapons seized or otherwise linked to the defendant. Martin argued that "none of the[ ] weapons ha[d] been determined to be the weapon used in the killing of Donald Stewart ..." (R. 54). The purpose of a motion *in limine* is to prevent the display of potentially prejudicial material to the jury until the trial court has the opportunity to rule on its admissibility.

*Boyd v. State* (1991), Ind., 564 N.E.2d 519, 524. As such, a motion *in limine* is not a final ruling on the admissibility of evidence and a ruling on the motion does not preserve error for appeal. *Id.*

■ Thus, appellate review in this case would have to be based on the trial court's final evidentiary rulings at trial. The record, however, reveals that Martin's counsel failed to object at trial to a large portion of testimony regarding the guns. Much of the testimony that was the subject of Martin's motion *in limine* was admitted without any objection by Martin's counsel. Special Agent Becker of the F.B.I. testified at length regarding the gun taken from Martin's home and defense interposed no objection. An objection was made only when the State began to elicit testimony regarding the chain of custody. The court heard argument and admitted the gun over defense's relevancy objection. Special Agent Becker also testified at length regarding the gun obtained from Martin's girlfriend. The record reveals no objection by Martin. Having said that a motion *in limine* does not preserve error and that Martin's counsel failed to interpose timely objections, this allegation of error has been waived.[3]

## II. Expert Testimony

Martin next contends that the trial court erred by admitting over defense's objection testimony of Dr. Kostides regarding the physical identity of the victim's skeletal remains. Specifically, Martin argues that Dr.

3. Notwithstanding waiver, Martin's argument is without merit. Martin argues that the weapons were improperly admitted because they were never sufficiently connected to the murder. The State concedes that it could not offer conclusive proof showing either gun to be the murder weapon. However, it argues that "[t]he evidence was relevant to demonstrating that [Martin] had access to and was in possession of a handgun at the time that the victim was shot and killed." Appellee's Brief at 8. A trial court has broad discretion in ruling on the relevancy of evidence. Furthermore, the condition of the .32 caliber revolver and the circumstances under which it was given to Taylor give rise to a reasonable inference that for some reason Martin wished to avoid being found in possession of it. *Garrett v. State* (1992), Ind., 602 N.E.2d 139, 142, *reh'g denied*. In *Garrett* the appellant argued that the

trial court erred in admitting a shotgun because it was not sufficiently connected with the crime or the appellant. The supreme court held that the trial court properly admitted the weapon and said that "[t]he lack of positive proof that the shotgun presented in fact was the one used in the shooting reflects only on the weight of the evidence, not on its admissibility.... The presence or absence of the shotgun in evidence could have had little, if any, effect on the ultimate outcome of the jury's verdict." *Id.* at 142 (citations omitted). Any evidence, even if inconclusive, which tends to connect a person with a crime, is admissible. *Smith v. State* (1993), Ind., 609 N.E.2d 1088, 1091, *reh'g denied*. Further, the court's ruling on admissibility of evidence is afforded wide latitude. *Id.* Based on these standards, we find that the trial court did not err in admitting the two handguns into evidence.

Kostides was never qualified as an expert witness. (Appellant's Brief at 10–11).

The State contends that Dr. Kostides was sufficiently qualified to testify regarding the comparison of x-rays that he had taken of the victim's teeth and the teeth found in the skeletal remains. Further, the State argues that since there was sufficient identification evidence independent of Dr. Kostides' testimony, any error was harmless.

■ In order to qualify a witness as an expert witness, two requirements must be met. First, the subject matter of the expert's opinion must be so distinctly related to some science, profession, business or occupation as to be beyond the knowledge of the average lay person. Second, the witness must have sufficient skill, knowledge or experience in the field to make it appear that the witness' opinion or inference will aid the trier of fact in the search for truth. *Fox v. State* (1987), Ind., 506 N.E.2d 1090, 1095. The decision of whether a witness is qualified to testify as an expert is within the sound discretion of the trial court. On appeal, we will not disturb that decision absent an abuse of discretion. *Id.*

■ The record reveals that Dr. Kostides graduated from the Indiana University Dental School in 1990 and is licensed to practice dentistry in Indiana. Dr. Kostides had treated the victim in the course of his practice. On August 27, 1990, Donald Stewart received a routine oral exam including x-rays and teeth cleaning. Dr. Kostides treated Stewart personally. Dr. Kostides placed a filling in one of Stewart's teeth and also noticed that two of Stewart's teeth were severely rotated. Dr. Kostides was requested by the Lake County Coroner's Officer to perform a comparison of his x-rays of Stewart and the mandible of the victim. Dr. Kostides testified at trial regarding the comparison he made between x-rays that he had taken of the victim's teeth and the teeth found in the skeletal remains of the victim. Dr. Kostides concluded that the teeth were those of the decedent victim.

The evidence revealed that at the time Dr. Kostides made the comparison, he had been out of dental school for approximately three months. Further, this was the first time he had made a comparison of this sort, and he had never before testified in court. These factors do not impact our decision. The trial court correctly stated that the fact that Dr. Kostides was relatively new to the practice of dentistry goes to the weight of his testimony rather than to its admissibility. *See Simpson v. State* (1994), Ind.App., 628 N.E.2d 1215, 1222. We find that Dr. Kostides was uniquely qualified to make the comparison between the x-rays that he took and the remains of the victim. We see no error.

### III. Newly Discovered Evidence

Finally, Martin argues that the trial court erred when it denied his request for a new trial due to newly discovered evidence. Specifically, Martin argues that the sworn statements of two newly discovered witnesses, Janet Williams and Dorothy King, establish the true identity of the perpetrator. Appellant's Brief at 11–14.

The State argues that the trial court, acting within its discretion, did not err in denying Martin's request for a new trial because the court found that the requirements for a new trial based on newly discovered evidence were not met. Specifically, the court found that the new evidence was not sufficiently credible and unlikely to produce a different result on retrial.

■ In order to receive a new trial based on newly discovered evidence, the party seeking relief must support his argument by one or more affidavits containing a statement of the facts showing (1) that the evidence has been discovered since the trial; (2) that it is material and relevant; (3) that it is not cumulative; (4) that it is not merely impeaching; (5) that it is not privileged or incompetent; (6) that due diligence was used to discover it in time for trial; (7) that the evidence is worthy of credit; (8) that it can be produced upon a retrial of the case; (9) that it will probably produce a different result on retrial. *Fox v. State* (1991), Ind., 568 N.E.2d 1006, 1007. When ruling on whether the newly discovered evidence would produce a different result on retrial, the trial court may consider the weight that a reasonable

trier of fact would place on the evidence and may consider the impact the evidence would have on a new trial in light of the original facts and circumstances. *Id.* We will not reverse the trial court's ruling absent an abuse of discretion and will deferentially review the trial court's decision. *Id.*

 Martin, by counsel, filed a motion to correct error alleging that newly discovered evidence proved that Elston Pickford shot Stewart.[4] In support of the motion, Martin presented the affidavits of Dorothy King and Janet Williams. (R. 7, 9). Both women were maternal aunts of Sharon Martin, the defendant's deceased daughter. The women said that they had overheard Pickford tell others that he committed the murder. The trial court heard exhaustive argument over the course of several days on the motion. After an evidentiary hearing on the motion[5] where the women were brought to testify in open court, the court denied the motion. The court found that the evidence would primarily serve to impeach co-defendant Elston Pickford; the new evidence was not credible; and the outcome would probably be the same on retrial. (R. 102).

Based on our standard of review, we cannot say that the trial court abused its discretion in denying the motion for new trial based on this newly discovered evidence. In view of the evidence, we cannot say that the testimony of the two affiants would have created a reasonable doubt that did not otherwise exist or that it would be likely to produce a different result. A new trial therefore is not merited. We find no error.

### CONCLUSION

Based on the foregoing, the trial court is affirmed in all respects.

Judgment affirmed.

RUCKER and SULLIVAN, JJ. concur.

---

4. Such request for a new trial is permitted by Ind.Crim.Rule 16 and Ind.Trial Rule 59.

---

5. The transcript of this hearing is not a part of the record of proceedings despite the fact that it is repeatedly referred to by both the court and counsel.