**Donna RATLIFF, Appellant–Plaintiff,**

v.

**Edward COHN, Appellee–Defendant.**

No. 49A02–9611–CV–739.

Court of Appeals of Indiana.

May 13, 1997.

Richard A. Waples, Jaunae M. Hanger, Waples & Hanger, Indianapolis, Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis, for Appellant–Plaintiff.

Greta M. Rowland, Indiana Advocates For Children, Inc., Indianapolis, Wayne O. Adams, III, David D. Robinson, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, for Amicus Curiae.

Jeffrey A. Modisett, Attorney General, Phillip D. Hatfield, Deputy Attorney General, Indianapolis, for Appellee–Defendant.

### REVISED OPINION

ROBERTSON, Judge.

When Donna Ratliff was fourteen years old, she set a fire which burned down the house and killed her mother and sister. After being waived into adult criminal court, Ratliff pled guilty to Arson and two counts of Reckless Homicide and was sentenced to

twenty-five years imprisonment. The sentencing judge "strongly and sincerely" recommended that the Indiana Department of Correction [DOC] place Ratliff in a juvenile facility where she could receive age-appropriate treatment. Nevertheless, the DOC incarcerated Ratliff at the Indiana Women's Prison. Ratliff filed the present lawsuit against the Commissioner of the DOC asserting that her incarceration at the Women's Prison violated several of her constitutional rights and requesting that the trial court order her transfer to an appropriate rehabilitative juvenile treatment facility.

The trial court dismissed the complaint and this appeal ensued. Ratliff is represented by the Indiana Civil Liberties Union. Two amici curiae, the Indiana Juvenile Justice Task Force and the Indiana Advocates For Children, Inc., have filed briefs on Ratliff's behalf. We reverse, addressing the following dispositive issue:

> whether Art. IX, § 2 of the Indiana Constitution prohibits the incarceration of juveniles with adults.

## DECISION

The structural integrity of our federal system depends upon state constitutions and state courts providing an independent guaranty of individual rights. Robert F. Utter, Sanford E. Pitler, "Presenting a State Constitutional Argument: Comment on Theory and Technique," 20 *Ind.L.Rev.* 635, 677 (1987). Our nation's classical model of dual sovereignty provides each state with the opportunity to serve as a constitutional laboratory, experimenting with 'novel social and economic experiments.' Utter at 643. When a state court fails to give life to the unique provisions of its own constitution, it deprives the people of its state the double security the nation's founding fathers intended to provide. *Id.* As noted by Chief Justice Shepherd:

> Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence.

Randall T. Shepherd, "Second Wind for the Indiana Bill of Rights," 22 *Ind.L.Rev.* 575 (1989) (Quoting *Mapp v. Ohio*, 367 U.S. 643,

659, 81 S.Ct. 1684, 1693–94, 6 L.Ed.2d 1081 (1961)).

The Indiana Constitution is to be interpreted as a fundamental instrument which is not to be stretched and strained to meet the exigencies and necessities of the moment. *Finney v. Johnson*, 242 Ind. 465, 179 N.E.2d 718, 721 (1962). The Indiana Constitution was framed to be strictly observed by all public officials and particularly by the courts as the guardians of the citizens' rights stated therein. *Id.* Interpretation of the Indiana Constitution is controlled by the text itself, illuminated by history and by the purpose and structure of our constitution and the case law surrounding it. *Price v. State*, 622 N.E.2d 954, 957 (Ind.1993). Properly interpreting a provision of the Indiana Constitution involves a search for the common understanding of both those persons who framed it and those who ratified it. *Collins v. Day*, 644 N.E.2d 72, 76 (Ind.1994). Indiana courts have long looked to the state constitutional convention debates as an important tool for interpreting the Indiana Constitution. *See id.*; *In re Todd*, 208 Ind. 168, 193 N.E. 865 (1935); Utter at 657.

The Indiana Constitution provides a great variety of protections for citizens which are not contained in the Federal Bill of Rights or elsewhere. Shepherd at 580. In particular, Art. IX of the Indiana Constitution sets up benevolent institutions and county farms to offer refuge to those who need assistance in caring for themselves. *Id.* fn. 37. Article IX, § 2 of the Indiana Constitution provides:

> The General Assembly shall provide institutions for the correction and reformation of juvenile offenders.

This provision is unique to the Indiana Constitution. No analog exists in the United States Constitution or any other state constitution. The only reported Indiana decision citing Art. IX, § 2 is *Jarrard v. State*, 116 Ind. 98, 17 N.E. 912 (1888), which held that the legislature has the power to provide for the reformation of juveniles who are entering upon a career of vice by prescribing measures for committing them to a reformatory institution, "not as criminals to punishment, but to prevent them from becoming criminals." 17 N.E. at 913.

In any event, the following excerpt from the constitutional debates plainly spells out the framers' intentions regarding Art. IX, § 2:

Mr. BRYANT. I was about to offer an amendment to this section, and I now propose to strike from the section the words, "have the power to," so as to make it obligatory upon the General Assembly to provide houses of refuge for juvenile offenders, instead of referring the subject to the discretion of that body, as proposed by the reported section.

Since this Convention assembled, we have had a state of facts presented to us, such as I had previously no conception of. In reply to a call made by the gentleman from Vanderburg, (Mr. Lockhart) early in the session, the warden of the State prison made a detailed communication to this body, exhibiting the names, ages, etc., of the convicts sent to the State prison from September, 1822, to November 1850. I have made out a list from this report of the warden, and I find the whole number of convicts committed within that time to be 1131, of which 157 (more than one-eighth of the whole number) were minors within the age of twenty-one years, and some of these as young as *eleven* years of age. The gentleman from Vanderburg deserves the thanks not merely of this Convention, but of the whole community, for dragging to light this outrage upon civilization and humanity. I am persuaded that if these facts had been spread before the public, such a deep disgrace to the character of Indiana would long since have been swept away by the fierce indignation of the people. There is one case where, as late as 1840, two brothers, one *fourteen* and the other *eleven* years of age, were sent to the State prison. Sir, what is the object of all punishment? It is two-fold: the prevention of crime and the reformation of the offender. How do you propose to diminish crime, or to reform offenders, by this system of sending the children of the State, perhaps the victims of dissolute parents and neglected education, to this school of vice and infamy, *where they cannot fail by means of the associations into which you thrust them, to be irretrievably ruined? With such facts before us, it is the imperative duty of the Convention to arrest this evil, to prevent this iniquitous system from being any longer tolerated, and to* *compel the General Assembly to provide institutions where these juvenile offenders can be restrained, and at the same time reformed. There is in this Convention, I am sure, but one feeling in regard to this matter, and that is, that this outrage upon all propriety and humanity shall no longer be.*

Mr. LOCKHART. I hope the amendment of the gentleman from Warren (Mr. Bryant) will be adopted. I have had a similar amendment lying on my table for several days. It seems to me that there is no question that can be presented for the consideration of this Convention, that is of more importance than this. The correction and reformation of juvenile offenders is a subject upon which I have thought and reflected much. Having occupied for several years past a high judicial position, I have often been pained to see the youth, the mere boy, branded as a felon, under our laws, and sent for a series of years to that worst of all prisons in the United States-the Jeffersonville State prison.

H. Fowler, *Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Indiana 1850* at 1903–04 (Italics original; underline added). We have no hesitation in concluding that the framers of the Indiana Constitution intended to abolish the practice of incarcerating juveniles with adult offenders by enacting Art. IX, § 2 requiring the General Assembly to provide institutions for the correction and reformation of juvenile offenders.

Moreover, the first statute providing for the waiver of juvenile offenders into adult criminal courts provided that juvenile offenders would be incarcerated separately from adult offenders. 1941 Ind. Acts CH. 233 § 24. Not until 1979, with the enactment of the Juvenile Court Act, Ind.Code 31–5–7–25, did the legislature repeal the requirement that juvenile offenders be incarcerated separately from adult offenders. The Act was, and is, silent on the matter of where juveniles convicted in adult courts should be committed before they reach adulthood.

Our supreme court recognized an exception to this general rule in *Hunter v. State,* 676 N.E.2d 14 (Ind.1996) which upheld the

incarceration with adults of "certain youths" who have "committed the most serious and violent crimes." *Id.* at 16–17. Accordingly, the supreme court upheld the constitutionality of Ind.Code 31–6–2–1.1(d) which automatically excludes from the juvenile justice system those individuals:

who are sixteen years-old or older at the time of the alleged crime and who are alleged to have committed Murder, Kidnaping, Rape, Criminal Deviate Conduct, Robbery in certain circumstances, Carjacking, Criminal Gang Activity, Criminal Gang Intimidation, Carrying a Handgun without a license, Children and Handguns, or Dealing in a sawed off shotgun.

676 N.E.2d at 16. Hunter fell within this statutory exception as he, at age sixteen, committed a brutal Murder after having been placed on probation for shooting another person. *Id.* at 15–16. In the present case, however, Ratliff, at age fourteen, committed offenses not designated under I.C. 31–6–2–1.1(d). Accordingly, the *Hunter* exception is not applicable here.

Article IX, § 2 of the Indiana Constitution, generally prohibits the incarceration of juveniles with adult prisoners. Ratliff's incarceration at the Indiana Women's Prison violates her rights under the Indiana Constitution. As the guardians of those rights, we must reverse and remand with instructions that the Commissioner of the DOC transfer Ratliff to an appropriate institution for the correction and reformation of juvenile offenders.

Judgment reversed.

BAKER and FRIEDLANDER, JJ., concur.