Orlando MARTIN, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 45A05–0009–PC–379.

Court of Appeals of Indiana.

March 20, 2001.

Susan K. Carpenter, Public Defender of Indiana, Cynthia Maricle Russell, Deputy Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge

### Case Summary

Orlando Martin appeals his conviction for murder, a felony, following a jury trial and subsequent direct appeal. We reverse.

### Issues

Martin raises two issues for our review which we restate as:

1. Whether the trial court committed fundamental error by instructing the jury with respect to aiding and abetting after the jury asked a question during deliberations; and

2. Whether Martin was denied effective assistance of counsel.

### Facts and Procedural History

The facts, as stated in Martin's direct appeal, are as follows:

> The record reveals that Martin's teenage daughter, Sharon, was injured on July 2, 1990, at her high school. Apparently, Sharon and an unidentified boy were involved in some type of sexual activity when Sharon experienced an epileptic seizure. Allegations of rape were made; however, no arrests occurred. The seizure led to an aneurism to Sharon's brain and she died on August 2, 1990. After Sharon's death, Martin and his friend Elston Pickford, enlisted the help of LaTanya Means to identify the boy Sharon was with at the time of her attack. LaTanya later provided Martin with the names of two fellow students, Shawn Lige and Donald Stewart.

> Subsequently, Pickford came to LaTanya's home, provided her with a car and asked her to locate Donald Stewart. LaTanya complied and eventually delivered Stewart back to her house. Pickford, Martin and Stewart later left LaTanya's house and went to a wooded area. Pickford observed Martin walking Stewart into the woods with a gun. Pickford then heard a scream and two shots.

> Stewart's mother eventually became worried when her son did not return home and contacted the local police and later the Federal Bureau of Investigation. She informed the police that her son had received threats connected to rumors that he was involved with the rape of a girl at the local high school.

> During the course of the investigation, police went to the home of Martin. Martin produced a handgun which the police took into their possession. Later, after Martin's arrest in connection with the murder of Donald Stewart, Martin's girlfriend gave F.B.I. agents a brown paper bag that she said Martin had given her prior to his arrest. The bag contained a second gun and a car rental contract. Martin's girlfriend had rented a Pontiac 6000 for two days late in August, the same time the crime was committed. Martin's girlfriend testified that Martin had access to the car.

> Pickford was also arrested at which time he divulged the whereabouts of Donald Stewart's remains. Agents found a decomposed body at that location. Stewart had been shot in the head.

*Martin v. State*, 636 N.E.2d 1268, 1270 (Ind.Ct.App.1994).

Martin was charged with murder, a felony. After the conclusion of evidence at his jury trial, the State requested that the trial court give an instruction on aiding and abetting, but the trial court refused, stating "that would be too confusing to the

jury." R. 963.[1] During deliberations, the jury sent a note to the court, asking, "If two people go to the murder site and only 1 person fires the weapon, are both considered guilty by the law? And the other one helped get the victim to the murder site." R. 81. In response, and over Martin's objection, the trial court gave a supplemental jury instruction on aiding and abetting to the jury.[2] Martin was found guilty as charged and filed a direct appeal wherein we affirmed his conviction. *Id.* at 1273. He sought post-conviction relief which was denied. He now appeals.

### Discussion and Decision

### I. Post Conviction Issues

Martin raises an issue in this appeal regarding a supplemental instruction given to the jury, an issue which was available to him on his direct appeal. Post-conviction relief is not a substitute for a direct appeal. Ind. Post–Conviction Rule 1, § 1(b). "The purpose of a petition for post-conviction relief is to raise issues unknown or unavailable to a defendant at the time of the original trial and appeal." *Capps v. State,* 709 N.E.2d 24, 25 (Ind.Ct. App.1999), *trans. denied.* Post-conviction relief contemplates a rather small window for review, particularly when the petitioner has been afforded the benefit of a direct appeal. *Id.* Thus, if issues were available at the time of the trial or on direct appeal, and were not raised, then the issues are waived. *Nuckles v. State,* 691 N.E.2d 211, 213 (Ind.Ct.App.1998).

In order to avoid waiver, Martin argues that the trial court committed fundamental error when it gave an instruction to the jury, after deliberations had begun, in direct response to the jury's question, and in isolation from the other instructions. He further asserts that the instruction should not have been given because it was not supported by the evidence.

The fundamental error doctrine permits review of an improperly raised error if the reviewing court finds that the error was so prejudicial to the rights of the petitioner that he or she could not have had a fair trial. *Nuckles,* 691 N.E.2d at 213. However, our Supreme Court has stated that the fundamental error exception is an extremely narrow one, and in post-conviction proceedings, is generally limited to the "right to effective assistance of counsel, or ... an issue demonstrably unavailable to the petitioner at the time of his [or her] trial and direct appeal." *Canaan v. State,* 683 N.E.2d 227, 235 n. 6 (Ind.1997), *cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998) (quoting *Bailey v. State,* 472 N.E.2d 1260, 1263 (Ind.1985)). Therefore, if the issue was available at the time of direct appeal, we may address the issue in the context of an ineffective assistance of counsel claim. *Hubbard v. State,* 696 N.E.2d 72, 74 (Ind. Ct.App.1998).

Here, the issue Martin raises with respect to the supplemental jury instruction was available to him on direct appeal; therefore, we will address the merits of his argument within our discussion of his claim of ineffective assistance of counsel.

### II. Ineffective Assistance of Counsel

Martin argues that he was denied effective assistance of his appellate counsel. He asserts that because his appellate counsel failed to argue, on direct appeal, that the trial court erroneously gave the supplemental instruction in the middle of deliberations, he was not afforded effective assistance of counsel. Thus, Martin alleges that his petition for post-conviction relief should be granted and that his conviction and sentence should be vacated. We agree.

---

1. All cites to the record herein are to the trial record.

2. The aiding and abetting instruction has also been referred to as the "accessory liability" or the "accomplice liability" instruction. For purposes of this opinion, it will be referred to as the aiding and abetting instruction, or simply as the supplemental instruction.

■ A successful claim of ineffective assistance of counsel has two components. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Lawrence v. State*, 464 N.E.2d 1291, 1294 (Ind.1984). First, the defendant must show that his counsel's performance was deficient, that is, that counsel's performance fell below an objective standard of reasonableness. *Taylor v. State*, 659 N.E.2d 1054, 1061 (Ind.Ct.App.1995), *trans. denied.* Second, the defendant must show that the deficient performance prejudiced the defense, that is, that but for counsel's deficient performance, the result of the proceedings would have been different. *Id.*

■ In reviewing the competency of counsel, there is a presumption that counsel is competent. *Howell v. State*, 453 N.E.2d 241, 242 (Ind.1983). Strong and convincing evidence is required to rebut this presumption. *Id.* Whether counsel was incompetent revolves around the facts of each case. *Id.* The reviewing court will not speculate as to what may have been the most advantageous strategy in a particular case. *Id.* at 242–43. Isolated poor strategy, inexperience, or bad tactics do not necessarily amount to ineffective assistance of counsel. *Id.* at 243. The judicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight. *Slaton v. State*, 510 N.E.2d 1343, 1345 (Ind. 1987), *cert. denied*, 506 U.S. 921, 113 S.Ct. 337, 121 L.Ed.2d 254 (1992).

With respect to arguments of ineffective assistance of appellate counsel, the claims generally fall into three basic categories: 1.) denying access to appeal, 2.) waiver of issues, and 3). failure to present issues well. *Harrison v. State*, 707 N.E.2d 767, 786 (Ind.1999), *cert. denied*, 529 U.S. 1088, 120 S.Ct. 1722, 146 L.Ed.2d 643 (2000). "When counsel's presentation of a claim on appeal is so deficient the reviewing court deems it waived, the appellant is in little better position than if counsel had failed to raise the issue in the first place. Counsel's

representation in its entirety is nevertheless still the touchstone of determining whether counsel's performance fell below an objective standard of reasonableness." *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). Further, even when counsel's performance has been found deficient under this analysis, the appellant still must show "a reasonable probability that, because of counsel's deficiencies, the convictions are fundamentally unfair or unreliable." *Id.*

Martin claims that at trial his appellate counsel failed to "argue in the direct appeal that the trial court erroneously gave the aiding and abetting instructions in the middle of deliberations." Brief of Petitioner–Appellant at 18. He claims that such a failure constituted deficient performance; that had the issue been raised, he would have been granted a new trial; and that he was therefore prejudiced.

■ Upon review of the opinion in Martin's direct appeal, we find that Martin's appellate counsel "raised a fourth issue in the summary of the argument section of his brief: Whether the trial court erred by giving the tendered instruction on aiding and abetting. However, Martin['s counsel] did not address this issue separately in the argument section of [the] brief." *Martin*, 636 N.E.2d at 1270 n. 2. Therefore, on direct appeal we held that the issue was waived because no argument or citation to authority in support of the contention was raised.

The State argues that we should reject Martin's argument because Martin has not shown that the argument with respect to the supplemental instruction would have "served him better than the argument his appellate counsel properly raised." Brief of Appellee at 6. Here, although Martin's appellate counsel mentioned the issue of the supplemental instruction in his brief on direct appeal, he failed to actually make any argument with respect to it and the issue was therefore waived. Thus, Martin

was put in little better position than if the issue had not been raised at all.

"Generally, any additional instruction to the jury once deliberations have begun is impermissible. This general prohibition exists to protect against giving special emphasis, inadvertent or otherwise, to a particular issue and to guard against the possibility that the additional instruction of the jury might suggest a resolution to an issue." *Downs v. State*, 656 N.E.2d 849, 851–52 (Ind.Ct.App.1995). There is only one limited and narrow exception to this rule that has been recognized, when there is an error or legal lacuna[3] in the final instructions. *Id.* at 852.

Thus, when the trial court is confronted with a question from the jury after the jury has commenced its deliberations, the trial court must respond in a manner that accords with the legal requirements for final instructions and that is fair. *Id.* "The path is extremely hazardous for the court that would depart from the body of final instructions and do other than reread the final instructions in responding to jury questions." *Id.* Only in extreme circumstances is such a departure warranted. *Id.* Therefore, only where an additional instruction is necessary to correct an erroneous one, or to fill in a gap, or legal lacuna, in the final instructions is a response other than rereading from the body of final instructions permissible. *Id.;* *see also Jenkins v. State*, 424 N.E.2d 1002, 1003 (Ind.1981).

Here, given that there were no errors or gaps in the given instructions, this issue clearly should have been raised and properly argued on direct appeal.[4] Because Martin's appellate counsel failed to properly address this issue on appeal, his assistance was deficient. Further, appellate counsel's deficient performance resulted in prejudice to Martin, because had the issue been properly addressed and available for our review on direct appeal, a different outcome would have resulted: that is, reversal for the reason that the trial court erred in giving the jury a supplemental instruction based on their question during deliberations. Martin was denied effective assistance of his appellate counsel.

### Conclusion

We hold that the post-conviction court erred in denying relief because Martin's appellate counsel was ineffective. Accordingly, we conclude that there was error.

Reversed.

DARDEN, J., and RILEY, J., concur.

---

**3.** Lacuna is defined as a "gap." *See id.* at 852 n. 4.

**4.** The State does not suggest that any of the instructions were erroneous, and only alleges that there was a legal lacuna, or gap, in the instructions and that the supplemental instruction filled that gap and was proper. However, an instruction on aiding and abetting would not cover a gap here because it does not apply to Martin's case. It was Martin who was with the victim and allegedly shot him. The evidence does not suggest that Martin was an accomplice or assistant to the murder, but rather that he committed the murder. Thus, an instruction on aiding and abetting would have been more appropriately given in relation to Pickford's involvement in the crime.

When evaluating whether a trial court erred in giving or refusing an instruction, we look at the following factors: "1) whether the tendered instruction correctly states the law; 2) whether there is evidence in the record to support giving the instruction; 3) whether the substance of the instruction is covered by other instructions." *Clark v. State*, 728 N.E.2d 880, 884 (Ind.Ct.App.2000), *trans. denied.* Here, there was no evidence in the record which supported giving the instruction to the jury because an aiding and abetting instruction would have related to Pickford's involvement, not Martin's. The trial court at one point even rejected the aiding and abetting instruction stating that it "would be too confusing to the jury." R. 963. Thus, the instruction was not proper and did not fill in a gap, or legal lacuna. Thus, the trial court erred in giving the instruction.